# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2606

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Paul Herron, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 13, 2008
Filed: August 26, 2008

_____

Before RILEY, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

At the close of his jury trial, Paul Herron was convicted of Assault with a Dangerous Weapon. <u>See</u> 18 U.S.C. §§ 7(3), 113(a)(3). The district court[1] sentenced Herron to 48 months imprisonment. Herron appeals his conviction and sentence. We affirm.

_____

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

I.

In August of 2006, Herron was a veteran participating in an alcohol detoxification program at the Veteran's Affairs ("VA") hospital in Hot Springs, South Dakota. Prior to entering the detoxification program, Herron was participating in the VA's inpatient alcohol treatment program and residing in the VA's alcohol rehabilitation program. Herron relapsed and was moved to the detoxification unit.

Approximately two weeks prior to Herron's relapse, he applied for VA pension benefits. In doing so, he discussed his application with Jerry White, a VA employee. All of Herron's contact with White was on the telephone; they never met in person. Although White's job was not that of a benefits advisor, he often assisted residents of the treatment program with their applications for benefits. During their telephone conversation, White advised Herron that he did not qualify for pension benefits.

On August 15, 2006, approximately two weeks after Herron spoke to White on the telephone, Herron was informed by a member of the treatment staff that upon his completion of the detoxification program he would be terminated from the inpatient program due to his relapse, which included violation of the program rules prohibiting the possession and ingestion of alcohol on the VA dormitory premises. On August 16, 2006, the medical staff noted that Herron's agitation level was elevated as he grew anxious and tearful about his impending discharge. As the day progressed, Herron obtained and drank enough alcohol to elevate his blood alcohol content (BAC) to a range of 0.28 to 0.33 percent.

Over the course of the day, Herron was observed on surveillance video from various locations on the VA campus drinking an unknown substance from a bottle which was concealed inside a plastic bag. Herron moved about the campus, making it difficult for observers to confront him about this behavior. As the day progressed, reports indicate that Herron exhibited rapid mood swings which ranged from agitated

and loud to calm and quiet. At one point, Herron's behavior frightened another veteran who was at the VA picking up his medication.

At approximately 3:00 o'clock that afternoon, Herron entered the VA medical library and approached Jerry Collogan, a medical librarian, who was seated at his desk. Collogan had never seen or met Herron prior to this time. Collogan's office was located just down the hall from Jerry White's office. Collogan saw Herron enter the library and offered to assist him. At that point, Herron looked at Collogan's name tag, and said "Jerry, I think you have a secret agenda." Collogan responded in a joking manner that no, in fact he was just "tending to the medical library." Herron then took the scissors from Collogan's desk and stabbed Collogan repeatedly. The two struggled until Collogan broke free from Herron and ran down the hall to the office of Carla Johnson, an experienced VA nurse. Johnson called the police while Collogan closed and locked the office door.

When Herron appeared outside Johnson's locked office door, he looked through a small window into Johnson's office. When he saw Collogan inside the office, he pounded on the door with a chair and repeatedly screamed "Jerry!" As the safety glass in the door started to shatter, two VA police officers arrived. The officers saw Herron standing at Johnson's door, holding the chair, and noticed that Herron's arms and hands were covered with blood. When he saw the officers, Herron told them that he did not know why they were there and stated that he had done nothing wrong. As the officers approached Herron, they detected the odor commonly associated with alcoholic beverages on his breath. Although he was initially cooperative, he became belligerent and tried to spit on the officers after he was handcuffed.

After Herron was taken into custody, Collogan's wounds were treated by the VA medical staff. Collogan suffered four puncture wounds to his head and chest area. He also had four lacerations on his chest and head. The wounds that Collogan suffered on his back, nose and neck required sutures.

Herron was indicted for the offense of assault with a dangerous weapon. When Herron's jury was seated, the district court admonished the jury not to: form an opinion prior to hearing all of the evidence; talk to anyone about the case; discuss the case among themselves; do any outside research; or conduct any independent investigation of their own. At the close of all evidence, in addition to being instructed about their deliberations and the law that applied, the jury again was reminded of the instructions the district court had given them at the beginning of the trial.

At trial, Herron argued that, due to his intoxication, he was unable to form the necessary criminal intent to harm Collogan. Herron testified that he is an alcoholic who commonly consumes up to a fifth of vodka when he drinks. He stated that he had no memory of the assault. Herron testified that he had no memory of the portion of the day Collogan was injured. He stated that his last memory, prior to being in his jail cell, was a conversation he had with a nurse in his VA hospital room early in the day. Two state chemists were presented by the defense as expert witnesses to support Herron's assertion that his BAC at the time of the offense was between a 0.28 and 0.33 percent. These experts also provided testimony about the common effects of such a BAC level. On cross-examination by the government, Herron's experts testified that it is possible that a heavy drinking alcoholic, such as Herron, could function quite well with a 0.33 percent BAC.

In addition to the testimony elicited from the expert witnesses on cross-examination, the government provided evidence indicating that alcohol did not adversely affect Herron as it might other people. The police officers testified that Herron had no trouble walking when he was escorted away from Johnson's office door. Additionally, they testified that Herron spoke coherently and deliberately when he provided the officers with his name and other information. At the time of his arrest, Herron correctly stated the general time of day and communicated with the officers in a clear manner.

Herron proposed that the jury be instructed that it could consider the offense of assault by striking, beating or wounding as a lesser-included offense of assault with a dangerous weapon. The district court refused the requested instruction noting that no case law supported his theory that assault by striking, beating or wounding is a lesser-included offense of assault with a dangerous weapon. Additionally, the district court cited the defense's theory of Herron's complete innocence due to his lack of memory of committing any assault as another reason for denying the submission of the proposed jury instruction.

As the first day of deliberations came to a close, the jury sent a written note to the district court which read: "We would like the exact definition of 'intent' and 'judgment' from a dictionary and a legal definition," and "what is voluntary intoxication, in instruction number 11?" Without objection by the parties or response from the district court, the jury was sent home for the evening and instructed to return the next morning. The following morning, after discussing the jury's note with the attorneys, the district court gave the jury the legal definition of the words "intent" and "judgment." At that time, Herron's attorney objected to the court giving the definitions to the jury, arguing that the district court should have referred the jury back to the original instructions that were provided. Herron's attorney also noted that he was concerned about the possibility that one of the jurors could have consulted a dictionary while at home the previous evening. He requested that the court admonish the jurors to notify the court if any of them consulted an outside source for the definitions requested in their communication with the court. The district court denied this request noting that the objection was based on conjecture rather than evidence.

After the jury returned a guilty verdict, Herron requested that the district court poll the jury asking each of them individually if they consulted any outside source, such as a dictionary, with respect to the definitions they requested the first day of deliberations. When the district court refused, Herron moved for a mistrial. The motion was denied.

At sentencing, Herron moved for a two-level downward adjustment for acceptance of responsibility pursuant to United States Sentencing Commission, Guidelines Manual, § 3E1.1. He argued that he never actually denied assaulting Collogan, rather he argued that he was too drunk to have the requisite intent to assault Collogan. The district court denied the motion finding that a review of Herron's testimony at trial did not demonstrate an acceptance of responsibility. Determining that Herron's Guidelines range was 41 to 51 months imprisonment and a fine of $7,500 to $75,000, the district court then sentenced Herron to 48 months imprisonment, a $7,500 fine and restitution in the amount of $181.25.

## II.

Herron appeals his conviction and sentence, arguing that the district court erred by: (1) denying his request to submit a lesser-included instruction on the offense of Assault by Striking, Beating or Wounding; (2) admitting the testimony of Jerry White; (3) denying his motion for mistrial; (4) denying his request for a downward adjustment for acceptance of responsibility; and (5) fining him $7,500.

## III.

## A.

We review district court rulings on jury instructions under the abuse of discretion standard. United States v. No Neck, 472 F.3d 1048, 1054 (8th Cir. 2007). A defendant is entitled to an instruction on a lesser-included offense when:

> (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence which would justify conviction of a lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent

-6-

of the greater and guilty of the lesser included offense; and (5) there is mutuality, i.e., a charge may be demanded by either the prosecution or defense.

United States v. Dodd, 473 F.3d 873, 876 (8th Cir. 2007).

Herron failed to satisfy the second requirement necessary for the submission of the requested lesser-included instruction. The elements of Assault with a Dangerous Weapon require that the defendant: 1) assault the victim; 2) intend to do bodily harm; and 3) use a dangerous weapon to commit the assault. 18 U.S.C. § 113(a)(3).

In order to establish an Assault by Striking, Beating or Wounding there must be proof of some form of physical contact. See id. § 113(a)(4). The offense of Assault by Striking, Beating or Wounding is similar to a "battery at common law." United States v. Whitefeather, 275 F.3d 741, 743 (8th Cir. 2002). This is so because the word "assault," as it is used in 18 U.S.C. § 113, is "more inclusive than under the common law and encompasses elements that would have fallen under traditional definitions of battery as well as assault." Id. Although physical contact is an element of Assault by Striking, Beating or Wounding, it is not an element of Assault with a Dangerous Weapon[2]. See 18 U.S.C. § 113(a)(3)-(4); United States v. Pierre, 254 F.3d 872, 875 (9th Cir. 2001); United States v. Estrada-Fernandez, 150 F.3d 491, 494-95 (5th Cir. 1998); United States v. Duran, 127 F.3d 911, 915 (10th Cir. 1997), cert. denied, 523 U.S. 1061 (1998). Therefore, the second requirement set forth in Dodd was not met, and the district court did not err in refusing Herron's requested lesser-included instruction.

---

[2]A cursory review of background descriptions in cases from this circuit indicates that on limited occasions lesser-included instructions of this nature were submitted to juries. However, we note that the question of whether Assault by Striking, Beating or Wounding is a lesser-included offense of Assault with a Dangerous Weapon has not been previously considered by this court.

-7-

## B.

Herron argues that the district court erred by admitting the testimony of Jerry White, over Herron's objection, as evidence of Herron's motive and intent pursuant to Federal Rule of Evidence 404(b). We review the district court's admission of evidence over objection for abuse of discretion. United States v. Jones, 266 F.3d 804, 812-13 (8th Cir. 2001).

Rule 404(b) provides that evidence of other crimes, wrong or acts is inadmissable as proof of a person's character in order to show that he acted in conformity with his character. Fed. R. Evid. 404(b). However, there are exceptions provided within the rule. In a criminal case, such evidence can be admissible for other purposes, such as proof of: motive, intent, opportunity, preparation, knowledge, plan, identity, or absence of mistake. Id.

At Herron's trial, the testimony of Jerry White was admitted for purposes of proving motive and intent pursuant to Rule 404(b). Jerry White testified that he never met Herron in person, about his telephone conversation with Herron wherein he informed Herron that he would not qualify for VA disability benefits, and the close proximity of his office to the medical library. In addition to White's testimony, the evidence indicated that Herron saw Collogan's name tag, which read "Jerry," and that, immediately preceding the attack, Herron stated that Collogan had "a secret agenda." Similarly, the evidence established that Herron repeatedly screamed the name "Jerry" as he pounded on nurse Johnson's office door. The district court determined that the nature of their telephone conversation and the fact that Herron and White never actually met in person was admissible pursuant to Rule 404(b) as evidence of Herron's motive and intent to attack "Jerry." Considering the totality of the evidence, we do not find that the district court abused its discretion in admitting the testimony of Jerry White.

C.

Next, Herron asserts that the district court erred in its handling of the question submitted by the jury, refusing to poll the jury about any possible misconduct or improper research when they retired for the evening, and denying his motion for a mistrial due to potential juror misconduct. We review a district court's handling of allegations of juror misconduct for an abuse of discretion. United States v. Gianakos, 415 F.3d 912, 921 (8th Cir. 2005). A district court's response to questions submitted from the jury is also reviewed for abuse of discretion. United States v. Anwar, 428 F.3d 1102, 1114 (8th Cir. 2005). Likewise, we review a denial of a motion for mistrial for abuse of discretion. United States v. Smith, 487 F.3d 618, 622 (8th Cir. 2007).

Based on a thorough review of the trial transcript we cannot say that the district court abused its discretion in its handling of the allegation of potential juror misconduct or in its denial of the motion for mistrial. Herron submitted no evidence of any misconduct on the part of any juror. There was no objection made prior to the court allowing the jurors to retire for the evening. The district court provided answers to the jurors' questions the following morning, prior to the jury's return to their deliberations. On appeal, Herron does not object to the answers submitted by the district court. Instead, he argues that the district court erred in allowing the jury to retire for the evening without first providing the answers and in declining to poll the jury about potential misconduct after they reached their verdict. However, his objection and motion for mistrial were based on pure conjecture that a juror could have consulted a dictionary. Absent any showing that the alleged potential misconduct occurred, the district court had no duty to conduct an inquiry into an unsupported allegation. See King v. Bowersox, 291 F.3d 539, 541 (8th Cir. 2002). With no evidence to establish that any juror misconduct ever occurred, Herron has argued only that there was a potential for misconduct, and thus he failed to establish that the district court abused its discretion.

## D.

Herron also asserts that the district court committed two sentencing errors. First, he avers the district court erred when it denied his request for a two-level reduction for acceptance of responsibility pursuant to Guidelines section 3E1.1. We review a district court's interpretation and application of the Guidelines de novo and its factual findings for clear error. United States v. Burnette, 518 F.3d 942, 945 (8th Cir. 2008).

Herron not only put the government to its proof at trial, but also continued to deny that he had the ability to form the requisite intent due to his voluntary intoxication. Herron has the burden to establish that he has clearly demonstrated that he is entitled to a two-level reduction in his offense level for acceptance of responsibility. USSG §3E1.1(a). Even a guilty plea does not entitle a defendant to a reduction for acceptance of responsibility as a matter of right. See United States v. Card, 390 F.3d 592, 595 (8th Cir. 2004) (despite defendant's plea of guilty and admission of conduct constituting the offense, defendant not entitled to reduction for acceptance of responsibility when the evidence of acceptance is outweighed by evidence of inconsistent conduct). The record reflects that Herron did not take responsibility for his conduct at his trial or his sentencing hearing. Therefore, we cannot say that the district court abused its discretion in denying Herron's request for acceptance of responsibility.

Finally, Herron argues that the district court erred by including a fine of $7,500 as part of his sentence. Herron alleges that the district court failed to assess his ability to pay when it imposed the fine. We review a district court's imposition of a fine and its determination of the amount of a fine for clear error. United States v. Allmon, 500 F.3d 800, 807 (8th Cir. 2007). Guidelines section 5E1.2(a) provides that a district court must impose a fine in every case unless the defendant establishes that he is not able to or likely to become able to pay a fine. USSG § 5E1.2(a). Here, Herron was

ordered to pay the minimum fine of $7,500 at the rate of $100 per month. There is no evidence that Herron asserted that he was not able to pay a fine or that he was not likely to become able to pay a fine upon his release from his term of imprisonment. He did not raise the issue at his sentencing hearing or in his sentencing memorandum. In fact, in his sentencing memorandum he stated that he "is a defendant very able to immediately begin contributing to restitution, if released on supervision . . . [with] a long employment history and is a very smart individual." He went on to assert that "[a] sentence placing [him] on supervision would allow him to immediately become employed and begin attempting to repay the VA and the victim."

Other evidence of Herron's financial condition and ability to pay a fine and restitution appears in the presentence investigation report (PSIR), which was considered by the district court. Through the PSIR, the district court was aware of much information that indicated Herron's ability to pay a fine. For example, the PSIR noted that Herron: had no dependants; was a trained jet engine mechanic; and was previously employed as a jet engine mechanic. Likewise, the PSIR noted that while Herron had no monthly income due to his pretrial incarceration, he owned a vehicle valued at $500, had $20 in a bank account, and the opportunity to earn a minimum of $232 per year in the Inmate Financial Responsibility Program of which one half would go toward payment of any court-ordered financial obligation. The PSIR also noted that Herron was responsible for a $50 per month storage fee; a student loan balance of $1,268, two unpaid judgments totaling $438; collection accounts totaling $7,042; and a charged off account of $5,072. The Guidelines fine range for Herron was $7,500 to $75,000, see USSG §5E1.2(c)(3), and the statutory maximum fine for his offense was $250,000, see 18 U.S.C. § 3571.

Guidelines section 5E1.2(d) provides that the district court shall consider eight enumerated factors when determining the amount of a fine. USSG §5E1.2(d)(1)-(8). Prior to imposing Herron's sentence, the district court had access to and reviewed the PSIR, the sentencing memoranda of the parties, and heard from counsel for the

government as well as counsel for Herron. Although the district court did not provide detailed findings of the Guidelines factors that it must consider, the record provides sufficient information to establish that the factors were considered and that Herron failed to establish that he could not pay or was not likely to be able to pay a fine. See Allmon, 500 F.3d at 807.

IV.

We therefore affirm Herron's conviction and sentence.

―――――――――