# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 08-2399

_____

United States of America,       *
                                  *

             Appellee,      *

                                  *   Appeal from the United States

     v.                             *   District Court for the

                                  *   District of South Dakota.

Jason Adam Pumpkin Seed,    *

                                  *

            Appellant.     *

_____

Submitted: February 10, 2009
Filed: July 16, 2009

_____

Before BYE, JOHN R. GIBSON and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury found Jason Adam Pumpkin Seed guilty of the sole count of an indictment charging him with aggravated sexual abuse and attempted aggravated sexual abuse, violations of 18 U.S.C. §§ 2241(a) and 1153. The district court[1] sentenced him to 200 months' imprisonment. Pumpkin Seed now appeals several adverse rulings, including: (1) the denial of his motion to dismiss the indictment; (2) the exclusion of evidence under Federal Rule of Evidence 412; and (3) the inclusion

---

[1]The Honorable Andrew W. Bogue, now deceased, United States District Judge for the District of South Dakota.

of a jury instruction on attempted aggravated sexual abuse. For the reasons discussed below, we affirm.

## I. BACKGROUND

On the evening of September 29, 2006, Jason Adam Pumpkin Seed, Heather Red Cloud and others met at Red Cloud's aunt's home in Wounded Knee, South Dakota, for a social gathering. Around 10:00 p.m., Pumpkin Seed and Red Cloud left the gathering, though not together. From this point their accounts of the evening's events differ significantly.

According to Red Cloud, after the two left the gathering, Pumpkin Seed grabbed and attacked her behind her aunt's home. Red Cloud attempted to flee his grasp by removing her jacket, but Pumpkin Seed forced her to her knees and eventually onto the ground. While on the ground, Pumpkin Seed covered Red Cloud's mouth with his hand, pulled down his pants, forced her jeans down to her ankles, and began to have vaginal intercourse with her. During this struggle, Red Cloud was eventually able to scream for help and attract the attention of three boys who were walking along a nearby bike path. Two of the boys approached and pushed Pumpkin Seed off of Red Cloud. Red Cloud, now free, pulled her jeans back up, began crying hysterically, hit Pumpkin Seed, and then ran back into her aunt's home.

According to Pumpkin Seed, after the two left the gathering, Red Cloud took Pumpkin Seed by the arm and they began kissing. Red Cloud took off her jacket and the two embraced on the ground, continuing to kiss. Pumpkin Seed unbuttoned his pants and her jeans, but he did not engage in any additional sexual advances after Red Cloud asked him not to go any further. Instead, the two continued to kiss until Red Cloud observed three boys approaching. Red Cloud got nervous and yelled "stop," prompting Pumpkin Seed to stand up. The boys then came over, recognizing Pumpkin Seed and Red Cloud, and Pumpkin Seed told them to go away because he was "trying

to get some." Red Cloud began to curse at Pumpkin Seed, claiming that he had raped her. Pumpkin Seed then called Red Cloud a "minor bunner"[2] in front of the boys, and Red Cloud responded by hitting him and becoming hysterical. Thereafter, Richard Little Moon came out of Red Cloud's aunt's home, observed the argument, ushered Red Cloud into the home, and told Pumpkin Seed to leave.

Once inside, Red Cloud told her aunt that Pumpkin Seed had raped her. Red Cloud's aunt called the police, and Red Cloud was transported to a hospital. Bethany Berry, a nurse midwife, examined Red Cloud and administered a rape kit. Berry observed a number of injuries on Red Cloud, including abrasions to her back and left knee, a cut lip, and scrapes and scratches on her neck and elbow, but no apparent injuries to her vaginal area. Berry also noticed grass stains on Red Cloud's jeans, dirt on the back of her shirt, and grass and debris in her hair. When Berry asked Red Cloud whether she had consensual intercourse within the last seventy-two hours, Red Cloud answered "no." Berry then took vaginal and cervical swabs and sent the samples to the South Dakota State Forensics Laboratory, which subsequently found the presence of semen and foreign pubic hair. The South Dakota laboratory forwarded the samples to the FBI, along with DNA samples from Pumpkin Seed, for donor identification.

During the evening of the alleged rape, Bureau of Indian Affairs Special Agent Carl Martinez interviewed Red Cloud about the incident. Red Cloud told Martinez that Pumpkin Seed had raped her and had ejaculated, either in her or on her. On May 22, 2007, Martinez presented the results of his investigation into the rape allegations to a federal grand jury. He recounted his interview with Red Cloud, including her statement that Pumpkin Seed had ejaculated in her or on her, and he discussed the South Dakota laboratory's findings of semen and foreign pubic hair. The grand jury

---

[2]At trial, Pumpkin Seed explained that a "minor bunner" is a derogatory term for a woman who has a proclivity for engaging in sexual relations with adolescent males.

returned a one-count indictment charging Pumpkin Seed with aggravated sexual abuse and attempted aggravated sexual abuse. Pumpkin Seed pled not guilty.

In August 2007, the Government received the FBI laboratory's results. The FBI determined that Pumpkin Seed was not the source of either the semen or foreign pubic hair samples from the rape kit and that the two samples did not share a common donor. Thereafter, Red Cloud admitted to having consensual sexual relations with another man a day and a half before the incident. Red Cloud explained that she had lied about her recent sexual history during the rape kit interview to protect the identity of her married sexual partner.[3] The Government informed Pumpkin Seed's counsel of this information.

Before trial, Pumpkin Seed filed a motion under Federal Rule of Evidence 412 to admit evidence of Red Cloud's sexual history, of past sexual relations between Red Cloud and him, of the semen, foreign pubic hair and extragenital injuries discovered during Red Cloud's rape kit procedure, and of Red Cloud's false answer to the rape-kit interview question concerning her recent sexual activity. The district court held an in camera hearing on the motion as required by Rule 412(c)(2) and granted the motion in part and denied it in part. The district court granted the motion as to any evidence of specific past sexual relations between Red Cloud and Pumpkin Seed under Rule 412(b)(1)(B), but it denied the motion as to all of the other proffered evidence, unless the Government opened the door to any of those subjects at trial. Pumpkin Seed also moved to dismiss the indictment, claiming that it was secured by Special Agent Martinez's testimony, which misled the grand jury into believing that the semen and pubic hair discovered on the rape kit samples belonged to Pumpkin

_____

[3]Red Cloud's admission does not account for the fact that the semen and pubic hair samples did not share a common donor (i.e. Red Cloud's married paramour), and nothing in the record resolves this apparent discrepancy. The circumstances surrounding this third man are of no moment here, however, because none of Pumpkin Seed's arguments depend on the unknown second donor.

Seed. The district court denied the motion to dismiss the indictment, finding that Martinez's testimony accurately communicated to the grand jury all of the evidence then known.

Before the case was submitted to the jury, Pumpkin Seed objected to the submission of a jury instruction defining attempted aggravated sexual abuse. Pumpkin Seed argued that the Government's evidence supported only an instruction for the completed offense of aggravated sexual abuse, not an attempt to commit the offense. The court overruled the objection. The jury returned a general verdict of guilty that did not distinguish between aggravated sexual abuse and attempted aggravated sexual abuse.

## II. DISCUSSION

### A. Motion to Dismiss the Indictment

Pumpkin Seed argues that the district court should have granted his motion to dismiss the indictment because Special Agent Martinez's grand jury testimony—that Red Cloud told him in an interview that Pumpkin Seed ejaculated in her or on her and that the South Dakota laboratory found the presence of semen and foreign pubic hair on the rape-kit samples—purposefully deceived the grand jury into believing that Pumpkin Seed was the source of the semen and pubic hair. According to Pumpkin Seed, this testimony improperly influenced the grand jury's decision to indict.

In reviewing the district court's denial of a motion to dismiss the indictment for alleged government misconduct, "we review the district court's factual findings for clear error and its legal conclusions de novo." *United States v. Nieman*, 520 F.3d 834, 838 (8th Cir. 2008); *see also United States v. Kouba*, 822 F.2d 768, 774 (8th Cir. 1987) (reviewing for clear error the district court's denial of a motion to dismiss based on alleged prosecutorial misconduct). Here, we find no reversible error in the district

court's refusal to dismiss the indictment, because "even assuming that there were errors in the charging decision that may have followed from the conduct of the prosecution, the petit jury's guilty verdict rendered those errors harmless." *United States v. Wilson*, 565 F.3d 1059, 1070 (8th Cir. 2009) (alterations omitted) (quoting *Kouba*, 822 F.2d at 774); *see United States v. Taken Alive*, 513 F.3d 899, 903-04 (8th Cir. 2008) (holding that a petit jury's guilty verdict renders grand jury error harmless because it results in no prejudice to the defendant).[4]

### B. Exclusion of Evidence of Red Cloud's Past Sexual Behavior Under Federal Rule of Evidence 412

Pumpkin Seed also appeals the district court's exclusion of certain evidence under Federal Rule of Evidence 412. First, Pumpkin Seed argues that the district court abused its discretion under Rule 412(b)(1)(A) by excluding evidence of specific instances of Red Cloud's sexual behavior, which he offered to prove that one of her alleged consensual sexual partners—not Pumpkin Seed—was the source of the injuries to her back, knee, lip, neck and elbow. Second, he contends that the district court improperly excluded evidence of Red Cloud's consensual sexual relationship with a married man and her false answer to the rape-kit interview question concerning her recent sexual activity, which she allegedly gave to conceal that relationship. According to Pumpkin Seed, this evidence was admissible under Rule 412(b)(1)(C) to prove that Red Cloud had a motive to falsely accuse Pumpkin Seed of rape because its exclusion would violate his constitutional rights under the Fifth and Sixth Amendments to the United States Constitution.

---

[4]Moreover, we agree with the district court's conclusion that Special Agent Martinez's testimony was not misleading based on the then-available evidence. The FBI laboratory results showing that Pumpkin Seed was not the source of the rape-kit semen and pubic hair were not available until after the grand jury returned the indictment. Special Agent Martinez did not testify that the semen and pubic hair belonged to Pumpkin Seed.

Federal Rule of Evidence 412, the federal rape-shield rule, generally prohibits the admission of evidence concerning the alleged victim's past sexual behavior or alleged sexual predisposition, subject to certain enumerated exceptions. The rule provides, in relevant part:

> **(a) Evidence generally inadmissible.**—The following evidence is not admissible in any civil or criminal proceeding involving alleged sexual misconduct except as provided in subdivisions (b) and (c):
>
>> (1) Evidence offered to prove that any alleged victim engaged in other sexual behavior.
>>
>> (2) Evidence offered to prove any alleged victim's sexual predisposition.
>
> **(b) Exceptions.**—
>
>> (1) In a criminal case, the following evidence is admissible, if otherwise admissible under these rules:
>>
>>> (A) evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury or other physical evidence;
>>>
>>> . . . and
>>>
>>> (C) evidence the exclusion of which would violate the constitutional rights of the defendant.

"We review a district court's interpretation and application of the rules of evidence de novo and its evidentiary rulings for abuse of discretion." *United States v. Street*, 531 F.3d 703, 708 (8th Cir. 2008). However, we review evidentiary rulings de novo when they implicate constitutional rights. *United States v. White*, 557 F.3d 855, 857 (8th Cir. 2009).

We turn first to Pumpkin Seed's argument under Rule 412(b)(1)(A). The district court excluded Pumpkin Seed's evidence of Red Cloud's past sexual behavior

offered to explain the source of her extragenital injuries.  In doing so, the court concluded that even if the Government opened the door to the subject at trial by eliciting testimony concerning Red Cloud's injuries, Pumpkin Seed's proffered evidence was not "otherwise admissible" under the Federal Rules of Evidence—specifically, under Rule 403—and, therefore, was not subject to the Rule 412(b)(1)(A) exception.  *See* Fed. R. Evid. 412(b)(1).  The district court found that the admission of this evidence would violate Rule 403 because "the argument that consensual sex with a third person may have caused the injuries to the victim is too weak to justify the admission of this highly prejudicial evidence."  *See* Fed. R. Evid. 403 ("[Relevant] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . .").

In reviewing a district court's evidentiary ruling under Rule 403, we accord "great deference [to] the district court's balancing of the probative value and prejudicial impact of the evidence." *United States v. Ruiz*, 412 F.3d 871, 881 (8th Cir. 2005).  Here, reversal is inappropriate because the record demonstrates that the district court engaged in the required balancing process and properly found that admitting specific instances of Red Cloud's consensual sexual behavior to explain her physical injuries would violate Rule 403.  First, Pumpkin Seed did not make any offer of proof concerning the circumstances of Red Cloud's past sexual activity from which the district court could assess the likelihood of her injuries being caused by her consensual sexual activity.  *See United States v. Boyles*, 57 F.3d 535, 548 (7th Cir. 1995) (finding no error in the district court's exclusion of evidence of an alleged rape victim's past sexual encounters under Rule 412 where the defendant failed to make a proper offer of proof).  Absent such an offer of proof, we cannot say that the district court abused its discretion in determining that the type and extent of physical injuries present on Red Cloud are generally inconsistent with consensual sexual intercourse, thereby suggesting that the disputed evidence concerning Red Cloud's consensual relationships has little or no probative value in providing an alternate source for her injuries.  *Cf. Hubbeling v. United States*, 288 F.3d 363, 367 (8th Cir. 2002) (rejecting

-8-

defendant's argument under Rule 412(b)(1)(A) and noting that previous acts of consensual sexual intercourse between an adolescent male and the alleged victim did not "provide[] an alternate explanation for the extensive injuries discovered during [the alleged victim's] medical examinations"). Second, the probative value of this evidence is substantially outweighed by the high risk of unfair prejudice and confusion of the issues posed by admitting evidence that Red Cloud was involved in at least two sexual encounters with different men, one of whom was married, within days of the alleged rape. *See United States v. One Feather*, 702 F.2d 736, 739 (8th Cir. 1983) ("The policy of Rule 412, to guard against unwarranted intrusion into the victim's private life, may be taken into account in determining the amount of unfair prejudice under Rule 403."); *see also United States v. Tail*, 459 F.3d 854, 861 (8th Cir. 2006) ("Admission of this evidence [under Rule 412] would have triggered mini-trials concerning allegations unrelated to Tail's case, and thus increased the danger of jury confusion and speculation."); Fed. R. Evid. 412 advisory committee's note ("The rule aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process."). Thus, we conclude that the district court did not abuse its discretion by excluding this evidence under Rule 403 and, consequently, Rule 412(b)(1)(A).[5]

---

[5]Pumpkin Seed has abandoned any argument under Rule 412(b)(1)(A) concerning the exclusion of evidence of Red Cloud's prior sexual behavior based on the source of the semen and the foreign pubic hair found on the rape-kit samples by failing to argue the issue in his opening brief to this court. *See United States v. Barnum*, 564 F.3d 964, 968 n.4 (8th Cir. 2009). Such an argument would have been unsuccessful in any event. The Government never broached the topic of the semen and foreign pubic hair found on the rape-kit samples; thus the proverbial evidentiary door remained closed to evidence showing the source of the semen and pubic hair. *See United States v. White Buffalo*, 84 F.3d 1052, 1054 (8th Cir. 1996).

We turn next to Pumpkin Seed's argument under Rule 412(b)(1)(C). Pumpkin Seed contends that the district court erred by excluding evidence purportedly showing that Red Cloud had a motive to falsely accuse him of rape—namely, evidence of Red Cloud's consensual sexual relationship with a married man and her false answer to the rape-kit interview question concerning her recent sexual activity. In his supplemental briefing in support of his Rule 412 motion before the district court, Pumpkin Seed explained that Red Cloud "was protecting the donor of semen in her body because he was married, and she suspected that she may have been pregnant by him and it would be embarrassing to her and life-destroying to the suspected father." In his opening brief before this court, Pumpkin Seed expanded his theory, postulating that "Red Cloud was motivated to make this false accusation to provide herself with an explanation if she ended up pregnant *or developed a venereal disease* from her two secret liaisons with the true donors of the semen and pubic hair." (Emphasis added.) Pumpkin Seed argues that the district court should have admitted this evidence under Rule 412(b)(1)(C) because its exclusion violates his rights under the Fifth Amendment's Due Process Clause and the Sixth Amendment's Confrontation Clause.

In determining the admissibility of a victim's other sexual behavior under Rule 412(b)(1)(C), we start with the premise that defendants have a constitutional right under the Fifth and Sixth Amendments to introduce evidence in their defense. *United States v. Bear Stops*, 997 F.2d 451, 454 (8th Cir. 1993); *see also United States v. Elbert*, 561 F.3d 771, 776 (8th Cir. 2009). The Supreme Court, however, has recognized that this constitutional right "is not without limitation." *Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (quoting *Rock v. Arkansas*, 483 U.S. 44, 55 (1987)). "The right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id.* Such interests include concerns about "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). Such limitations on a defendant's right to introduce evidence are permissible so long as they are not "arbitrary or disproportionate to the purposes

-10-

they are designed to serve." *United States v. Bordeaux*, 400 F.3d 548, 558 (8th Cir. 2005) (quoting *Lucas*, 500 U.S. at 151). Thus, the key inquiry here is whether the district court's exclusion of evidence concerning Red Cloud's consensual sexual relationship with a married man and her attempt to conceal that relationship by lying about her recent sexual activity during the rape-kit interview was arbitrary or disproportionate to the purposes that its exclusion was designed to serve. *See id.*

First, we conclude that the district court's exclusion of this evidence was not arbitrary. There were numerous purposes for excluding this evidence under Rule 412. The exclusion saved Red Cloud from the harassment and embarrassment concomitant with discussing the details of one's past sexual activity, *see id.*, and thwarted an "unwarranted intrusion into [her] private life—[an effect] that Rule 412 was designed to prevent," *see Bear Stops*, 997 F.2d at 455. The exclusion of this evidence also avoided possible confusion of the issues by the jury, *see Tail*, 459 F.3d at 861, and prevented a thinly-veiled attack on Red Cloud's general credibility, *see United States v. Withorn*, 204 F.3d 790, 795 (8th Cir. 2000) ("[I]mpeaching the victim's truthfulness and showing her capability to fabricate a story 'are not recognized exceptions to Rule 412.'" (quoting *White Buffalo*, 84 F.3d at 1054)).[6]

Second, we conclude that the district court's exclusion of this evidence was not disproportionate to the purposes served by exclusion. Pumpkin Seed's only reason for seeking to admit this evidence was to demonstrate that Red Cloud had a motive to make a false rape allegation. More specifically, Pumpkin Seed argued that she needed a cover story to protect her married paramour's identity in case she became pregnant or contracted a sexually-transmitted disease ("STD") during their relationship. In other words, Pumpkin Seed claimed that if Red Cloud became pregnant or got an STD as a result of her relationship with the married man, she could blame it on her rape by

---

[6]In his supplemental briefing on the Rule 412 motion, Pumpkin Seed argued for the admission of Red Cloud's lie during the rape-kit interview by claiming that "[i]f she lies about one fact [X] she is lying about other facts."

-11-

Pumpkin Seed and avoid publicly disclosing her relationship with the married man. During the Rule 412 hearing, however, the Government discredited Pumpkin Seed's feared-pregnancy theory. The Government offered that in October 2002, Red Cloud underwent a tubal ligation, which made it extremely unlikely that she would fear becoming pregnant during the course of her relationship with the married man. Accordingly, evidence of Red Cloud's prior sexual relationship with the married man, offered to prove that Red Cloud feared becoming pregnant by him, had little, if any, probative value as to Red Cloud's motive to falsely accuse Pumpkin Seed of rape. Pumpkin Seed's feared-STD theory faces a similar defect.[7] An STD, unlike a pregnancy, generally is not readily observable by members of the general public, and therefore it is highly unlikely that anyone other than her physician or her married paramour would know about it. Pumpkin Seed posits no reason why Red Cloud would feel the need to make a false rape allegation in order to conceal the identity of the source of a feared STD that, by its nature, would not be publicly observable or likely to result in public disclosure. *See Boyles*, 57 F.3d at 548. Accordingly, evidence of Red Cloud's prior sexual relationship with the married man, offered to prove that Red Cloud feared contracting an STD from him, also lacks probative value as to Red Cloud's motive to falsely accuse Pumpkin Seed of rape. Thus, "[i]n light of the minimal probative value of the evidence and the important purpose of the exclusion, [the] exclusion of the [evidence] was not disproportionate to the purpose behind the exclusion." *See Bordeaux*, 400 F.3d at 559.

---

[7]The admissibility of evidence of Red Cloud's consensual sexual relationship with a married man and of her false answer to a rape-kit question based on Pumpkin Seed's theory that Red Cloud needed a cover story if she got an STD from her married paramour is subject to plain error review because Pumpkin Seed raised the STD theory for the first time in his opening brief to this court. *See Elbert*, 561 F.3d at 775 ("'When a party has failed to preserve an evidentiary issue for appellate review,' we review for plain error." (quoting *Williams v. Wal-Mart Stores, Inc.*, 922 F.2d 1357, 1360 (8th Cir. 1990))). However, it makes no difference here whether we subject this theory to the stricter plain error standard, because we find no error, plain or otherwise, in the court's exclusion of this evidence.

We also are not persuaded that the Supreme Court's decision in *Olden v. Kentucky*, 488 U.S. 227 (1988) (per curiam), requires the admission of this evidence based on Pumpkin Seed's pregnancy and STD theories. In *Olden*, the Court reversed Olden's rape conviction because the Kentucky rape-shield rule improperly denied Olden the opportunity to impeach the alleged victim based on bias in violation of the Confrontation Clause. *Id.* at 232. Specifically, the Kentucky rape-shield rule prevented Olden from introducing evidence of the alleged victim's sexual behavior offered to prove her motive to falsely accuse Olden of rape. *Id.* at 230. Although both this case and *Olden* involve evidence offered to prove that the respective alleged victims had a motive to make a false rape allegation, the cases differ in a key respect—namely, the evidence's relative "potential to demonstrate the falsity of [the alleged victim's] testimony." *See id.* at 232. In *Olden*, the defendant's evidence of the alleged victim's extramarital relationship with a married man was highly probative of the alleged victim's motive to make a false rape claim, given that the married man caught the alleged victim and Olden in a compromising position, which would threaten her ongoing relationship with the married man. *Id.* Here, instead, Pumpkin Seed's theory of Red Cloud's motive to falsely accuse Pumpkin Seed of rape has little, if any, potential to demonstrate the falsity of her testimony. Red Cloud knew that she could not get pregnant from her married paramour as a result of her tubal ligation, and Pumpkin Seed has made no offer of proof showing that Red Cloud feared contracting STDs (which, by their nature, are not readily discoverable by the general public, thereby undermining her need for a cover story).[8] Accordingly, we conclude that the district court did not err in holding that this evidence was inadmissible under Rule 412(b)(1)(C).

_____

[8]In his reply brief and at oral argument, Pumpkin Seed for the first time offers an *Olden*-like theory for Red Cloud's motive to falsely accuse him of rape; that is, that Red Cloud feared her relationship with her married paramour would be in jeopardy if he discovered that she was having consensual sexual relations with Pumpkin Seed. By failing to raise this issue to the district court or to this court in his opening brief, however, Pumpkin Seed abandoned this argument. *See Barnum*, 564 F.3d at 968 n.4.

-13-

## C. Attempted Aggravated Sexual Abuse Instruction

Pumpkin Seed's final argument in this appeal is that the district court abused its discretion when it overruled his objection to the inclusion of a jury instruction on attempted aggravated sexual abuse. Pumpkin Seed alleges that the instruction was improper because Red Cloud testified that Pumpkin Seed penetrated her and, therefore, the evidence, if believed, only supported a conviction for the completed offense of aggravated sexual abuse, not an attempt.

We review the district court's choice of jury instructions for an abuse of discretion. *United States v. No Neck*, 472 F.3d 1048, 1054 (8th Cir. 2007). "We will affirm so long as 'the instructions, taken as a whole, fairly and adequately submitted the issues to the jury.'" *United States v. Aleman*, 548 F.3d 1158, 1166 (8th Cir. 2008) (quoting *United States v. Lalley*, 257 F.3d 751, 755 (8th Cir. 2001)), *cert. denied*, 556 U.S. ---, 77 U.S.L.W. 3656 (2009).

Attempted aggravated sexual abuse is a lesser-included offense of aggravated sexual abuse. *See United States v. Remigio*, 767 F.2d 730, 733 (10th Cir. 1985) ("The crime of attempt is a lesser included offense of the substantive crime."). A district court acts within its discretion by giving an instruction on a lesser-included offense where:

> (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence which would justify conviction of a lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) there is mutuality, i.e., a charge may be demanded by either the prosecution or defense.

*United States v. Herron*, 539 F.3d 881, 885-86 (8th Cir. 2008) (quoting *United States v. Dodd*, 483 F.3d 873, 876 (8th Cir. 2007)).

Here, Pumpkin Seed's arguments on appeal concern the third and fourth *Herron* elements: the existence of evidence justifying a jury conviction of attempted aggravated sexual abuse and the existence of a dispute concerning the proof of attempted aggravated sexual abuse and (completed) aggravated sexual abuse. Based on the Government's evidence adduced at trial, a jury could have reasonably believed either of two scenarios: that Pumpkin Seed penetrated Red Cloud by force with the requisite intent, thereby completing the offense of aggravated sexual abuse, or that Pumpkin Seed took a substantial step toward completing the offense of aggravated sexual abuse by force with the requisite intent without actually penetrating Red Cloud, thereby committing an attempt. The jury could have reasonably believed the first scenario by accepting Red Cloud's full account of the incident, including her testimony that Pumpkin Seed forced himself onto her and had sexual intercourse with her against her will. Alternatively, the jury could have reasonably believed the second scenario by accepting part of Red Cloud's account of the incident, including her testimony that Pumpkin Seed forced himself onto her, but accepting part of Pumpkin Seed's account of the incident that there was no vaginal penetration. Accordingly, we conclude that the Government presented "some evidence which would justify conviction of a lesser offense" and that "the proof on the element or elements differentiating the two crimes [was] sufficiently in dispute so that the jury [could have] consistently [found Pumpkin Seed] innocent of the greater and guilty of the lesser included offense." *See id.* at 886. Therefore, we conclude that the district court did not abuse its discretion in including a jury instruction on the lesser-included offense of attempted aggravated sexual abuse.[9]

---

[9]Even if there was insufficient evidence to support the district court's instruction on attempted aggravated sexual abuse, we would still reject Pumpkin Seed's argument. *See United States v. Dreamer*, 88 F.3d 655, 658 (8th Cir. 1996) (rejecting defendant's argument that "there was insufficient evidence to support [a

## III. CONCLUSION

For the foregoing reasons, we affirm the district court.

_____

jury] instruction" by concluding that "[w]hen the district court submits to the jury two or more grounds for conviction, for one of which there was insufficient evidence, and it is impossible to tell on what grounds the jury decided the defendant's guilt, we cannot reverse the jury's general verdict of guilty."). Here, as in *Dreamer*, we would not reverse Pumpkin Seed's conviction because taken in the light most favorable to the guilty verdict, the Government presented sufficient evidence to support Pumpkin Seed's conviction for aggravated sexual abuse, and the jury's general verdict of guilty makes it impossible to determine whether the jury convicted Pumpkin Seed for a completed offense or an attempt. *See id.*