# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 18-1138

———————————————

United States of America

*Plaintiff - Appellee*

v.

Chavez Spotted Horse

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of South Dakota - Aberdeen

——————————

Submitted: December 14, 2018
Filed: February 20, 2019

——————————

Before LOKEN and ERICKSON, Circuit Judges, and MAGNUSON,[1] District
Judge.

——————————

ERICKSON, Circuit Judge.

In October 2017, a jury found Chavez Spotted Horse guilty of three counts of
Child Abuse, in violation of 18 U.S.C. § 1153 and SDCL § 26-10-1, as well as three

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District
of Minnesota, sitting by designation.

counts of Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 1153 and 113(a)(3). Spotted Horse appeals, asserting that the district court[2] erred in four ways: (1) by defining "dangerous weapon" too broadly in its jury instructions; (2) in refusing to instruct the jury on reasonable use of disciplinary force by a guardian, which is a defense to child abuse under South Dakota law; (3) by excluding evidence of his reason for disciplining his niece P.M.; and (4) by denying his subsequent motion for a mistrial. We affirm.

## I. Background

Between October 2014 and December 2016, P.M. and her older brother C.S.H. lived with their uncle Spotted Horse in Little Eagle, South Dakota. Little Eagle is located on the Standing Rock Indian Reservation. The children had volunteered to live with Spotted Horse because their grandmother and legal guardian could no longer handle the number of grandchildren living in her house.

On December 1, 2016, the staff at Little Eagle Day School reported to the Bureau of Indian Affairs that they had noticed facial bruises and scratches consistent with child abuse on P.M., a fifth grader at the school. Special Agent Sheri Salazar responded. Agent Salazar interviewed the girl and examined her injuries. The agent also observed "several abrasions and contusions to her back in different stages of healing," and bruises on her arms, hands, shoulders, and legs.

Agent Salazar then took P.M. to Indian Health Services in Fort Yates, North Dakota, where P.M. was examined by a pediatrician, Dr. Sara Jumping Eagle. Dr. Jumping Eagle observed that P.M. had "numerous bruises [and] contusions" at "various stages of healing throughout her entire body"—specifically mentioning

---

[2]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

-2-

injures to P.M.'s left ear, both sides of her face, one of her hands, and her back, thighs, and upper arms. Suspecting abuse, Dr. Jumping Eagle referred P.M. to Sanford Hospital in Fargo, North Dakota, to see another pediatrician and have additional tests done to rule out a possible brain injury. Dr. Jumping Eagle also recommended that P.M. be monitored because "as the bruising healed it could also go into her bloodstream and affect her kidneys." Finally, Dr. Jumping Eagle recommended a follow-up appointment because of a finding on one of P.M.'s X-rays.

P.M. told investigators that Spotted Horse hit her with four different objects on three separate days during the past week. On November 27, 2016, Spotted Horse confronted P.M., accusing her of improper behavior with boys at school. When P.M. refused to answer his questions, Spotted Horse beat her with a plastic spoon. The next day, Spotted Horse resumed his interrogation of P.M. about her conduct with boys. This time he beat her across the back with a wooden back scratcher until it broke. Spotted Horse then commanded C.S.H. to find something else that he could use to discipline P.M. C.S.H. delayed, hoping that Spotted Horse would relent, but when commanded again, C.S.H. reluctantly returned with a plastic blind wand. Spotted Horse struck P.M. numerous times across the back with the blind wand as she screamed, cried, and begged him to stop. Unsatisfied with P.M.'s answers, the questioning resumed two days later, on November 30. When P.M. once again refused to provide answers that Spotted Horse deemed appropriate, he became enraged, grabbed a plastic hanger, and beat her across the back until the hanger broke.

On January 19, 2017, Spotted Horse was indicted on three counts of child abuse and three counts of assault with a dangerous weapon for striking P.M. with the spoon, blind wand, and hanger.[3] Prior to trial, Spotted Horse filed a notice of his intent to introduce evidence of his motive for administering the discipline to P.M. because he

---

[3]Spotted Horse was not charged for his conduct involving the wooden back scratcher.

believed that the motive "was a basis for Defendant to reasonably believe it was necessary to discipline her in that manner." Spotted Horse noted that the case was not a case covered by Federal Rule of Evidence 412 but that he was giving notice pursuant to the rule to avoid any later claims by the United States. The specific evidence that Spotted Horse sought to introduce was testimony "that he was informed that P.M. was kissing an older boy and letting [the boy] touch her inappropriately or sexually . . . to explain why [Spotted Horse] disciplined her." He also filed a supplemental Rule 412 notice seeking to introduce testimony that "P.M. told [him] that she was sexually abused while in a foster home in Missouri before she moved to South Dakota."

The district court took up the notices in the final pretrial conference on October 16, 2017, and after a brief discussion ruled the testimony mentioned in the supplemental notice inadmissible. The government sought clarification of the court's ruling especially related to the original Rule 412 notice. The court advised that some of the conduct described in the original notice was admissible, noting: "[T]he fact that he thought that she was hanging around with too many boys or something of that nature or kissing a boy or something, that would be [properly] subject to discipline, perhaps."

The case came on for trial the next day. At the conclusion of C.S.H.'s testimony, the court held a bench conference about testimony related to P.M.'s behavior with boys at school. The prosecution and defense each indicated their "impression that we were going to be allowed to get into the fact that the defendant believed that she may have been kissing or inappropriately contacting older boys." During the bench conference, the court clarified its ruling, directing, "But when you get into the question of whether or not this child allowed some boys to sexually touch her, to molest her, to commit a crime, that's barred by Rule 412, in my opinion, unless, of course, its exclusion would violate the constitutional rights of the defendant." Defense counsel moved for a mistrial "because this is a ruling, middle of trial, contrary to what the ruling was yesterday. And that . . . now affects how I can

present my defense." The court denied the motion for a mistrial and reiterated, "I'm telling you that you're not going to ask her whether she was sexually – whether she has been sexually touched by anybody. . . . If she is kissing boys under the bleachers, that's fine." Defense counsel renewed the motion during a chambers conference at the end of the day, and the court again denied the motion.

Spotted Horse elected to testify on his own behalf. In that testimony, he admitted to hitting P.M. with the objects but explained that he believed the discipline was necessary. Specifically Spotted Horse testified that he was merely disciplining P.M. for misbehaving and that he resorted to physical discipline only as a last resort after lesser forms of discipline, such as verbal correction, grounding, and extra chores, proved ineffective. Spotted Horse testified that he was concerned about P.M. bothering and kissing boys at school and that he was trying to stop her behavior from escalating into something more serious. When Spotted Horse attempted to testify about P.M. engaging in sexual touching with boys at school, the court prohibited him from doing so and struck his answer.

On October 17, 2017, the district court held an instructions conference. Prior to trial, Spotted Horse had submitted proposed jury instructions. Defendant's Proposed Jury Instruction No. 13 stated in relevant part, "A 'dangerous weapon' means an object used in a manner likely to endanger life or inflict serious bodily harm." Spotted Horse objected to the court's Jury Instruction No. 18, which read, "The phrase 'dangerous weapon,' as used in these instructions means any object capable of being readily used by one person to inflict bodily injury upon another person." The court overruled his objection.

Spotted Horse also requested that the court add Defendant's Proposed Instruction No. 14 to the court's instructions. The proposed instruction, based on the statutory defense to child abuse provided in SDCL § 22-18-5, stated:

As it pertains to the charges of Child Abuse, it is a defense if the Defendant used reasonable force against P.M. for restraint or correction. The use of force against a child is not unlawful if committed by a parent, an authorized agent of any parent, or by any guardian, in the exercise of a lawful authority to restrain or correct the child and if restraint or correction has been rendered necessary by the misconduct of the child, or by the child's refusal to obey the lawful command of such parent or an authorized agent or guardian, and the force used is reasonable in manner and moderate in degree.

The court overruled Spotted Horse's requested instruction, explaining:

The South Dakota child abuse statute, which is SDCL 26-10-1, deals with possible defenses to charges of child abuse if the defendant used reasonable force, and it refers to "a parent or the authorized agent of any parent." Mr. Spotted Horse is neither one of those. And then "or by any guardian." He is not the guardian. And South Dakota law defines a "guardian" as "one appointed by the Court to be responsible for the personal affairs of a minor or protected person, but excludes one who is merely a guardian ad litem." That's SDCL 29A-5-102.

"Guardian" is a term of art. It's a legal term, and it's not up to the jury to decide what the law is. That's my job. And I'm ruling that Mr. Spotted Horse had no more authority to touch this child than I did. The fact that the child was living with him has no legal significance.

The jury found Spotted Horse guilty on all six counts. On January 4, 2018, the district court sentenced Spotted Horse to concurrent terms of 76 months' imprisonment on each count to be followed by three years of supervised release.[4] This timely appeal followed.

---

[4]The court ordered the sentence in this case to be served consecutive to the sentence imposed in South Dakota District Court Case No.1:17-cr-10013, Eighth Circuit Court of Appeals No. 18-1139.

## II. Discussion

### A. Assault with a Dangerous Weapon Instruction

Spotted Horse contends the district court defined "dangerous weapon" too broadly in its jury instructions, "allowing the jury to convict him based on his use of unusually innocuous items." "We review a district court's formulation of jury instructions for an abuse of discretion and its interpretation of law *de novo*." United States v. Farah, 899 F.3d 608, 614 (8th Cir. 2018) (citing United States v. Cornelison, 717 F.3d 623, 626 (8th Cir. 2013)). We will not reverse if the instructional error is harmless. Id. (citing United States v. Dvorak, 617 F.3d 1017, 1024 (8th Cir. 2010)).

Spotted Horse argues the district court was bound under the prior panel rule to use the more restrictive definition of "dangerous weapon" that he requested. See Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (quoting T.L. ex rel. Ingram v. United States, 443 F.3d 956, 960 (8th Cir. 2006)) ("[W]hen faced with conflicting panel opinions, the earliest opinion must be followed 'as it should have controlled the subsequent panels that created the conflict.'"). Spotted Horse relies on our decision, United States v. Hollow, 747 F.2d 481 (8th Cir. 1984), which he calls the "first Eighth Circuit opinion to define ['dangerous weapon'] under § 113." Hollow is the first of a line of cases that Spotted Horse erroneously believes are implicated in this case. He correctly notes that in Hollow we stated, "We have no difficulty concluding that the knife was used in a manner likely to endanger life or inflict serious bodily harm." Id. at 482. He also correctly notes that subsequent to Hollow in other sufficiency of the evidence cases, we defined "dangerous weapon" more broadly as "an object capable of inflicting bodily injury." See, e.g., United States v. Farlee, 757 F.3d 810, 815 (8th Cir. 2014); United States v. Steele, 550 F.3d 693, 699 (8th Cir. 2008); United States v. LeCompte, 108 F.3d 948, 952–53 (8th Cir. 1997).

What Spotted Horse fails to recognize is that these sufficiency of the evidence cases did not focus on defining a "dangerous weapon" and our choice of phrasing in a different context cannot be transplanted into a jury instruction context. The prior panel rule only applies when panel opinions actually conflict, which is simply not the case here. See Passmore v. Astrue, 533 F.3d 658, 660 (8th Cir. 2008) (citing Brecht v. Abrahamson, 507 U.S. 619, 630–31 (1993)) ("[W]hen an issue is not squarely addressed in prior case law, we are not bound by precedent through *stare decisis*."); see also Webster v. Fall, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

The district court did not abuse its discretion by defining "dangerous weapon" as "any object capable of being readily used by one person to inflict bodily injury upon another person." The court's definition fairly tracks the statute, 18 U.S.C. § 113(a)(3), which requires "intent to do bodily harm," rather than "serious bodily harm." The definition is also consistent with the majority of our opinions over the past two decades involving assault with a dangerous weapon (albeit in the context of sufficiency of the evidence). That the objects used by Spotted Horse were relatively innocuous is of no significance. See United States v. Peneaux, 432 F.3d 882, 890 (8th Cir. 2005) (internal citations omitted) (noting that "[s]uch innocuous objects as pool sticks and chairs have been found to constitute dangerous weapons in certain circumstances"). In any event, any instructional error was harmless, given the nature and vast extent of P.M.'s injuries.

### B.     Reasonable Use of Disciplinary Force Defense

Spotted Horse next challenges the district court's refusal to instruct the jury on the reasonable use of disciplinary force by a guardian as a defense to the crime of child abuse. When a district court declines to give a jury instruction setting forth a legal defense, we review the denial *de novo*. United States v. Young, 613 F.3d 735,

743 (8th Cir. 2010). "To the extent that the district court's legal conclusion regarding whether [Spotted Horse's] defense theory accurately reflected the law was based on factual findings, we review for clear error." Id. at 744 (quoting United States v. Benning, 248 F.3d 772, 775 (8th Cir. 2001)).

Spotted Horse's proposed instruction was based on SDCL § 22-18-5, which outlines a statutory defense to child abuse charges under South Dakota law:

> To use or attempt to use or offer to use force upon or toward the person of another is not unlawful if committed by a parent or the authorized agent of any parent, or by any guardian, teacher, or other school official, in the exercise of a lawful authority to restrain or correct the child, pupil, or ward and if restraint or correction has been rendered necessary by the misconduct of the child, pupil, or ward, or by the child's refusal to obey the lawful command of such parent, or authorized agent, guardian, teacher, or other school official, and the force used is reasonable in manner and moderate in degree.

The court concluded that Spotted Horse did not qualify as a "guardian" for purposes of the statute because he was not P.M.'s legal guardian. Spotted Horse contends the court's conclusion was in error because he was P.M.'s guardian under the ordinary meaning of that term, which is left undefined by the statute.

We need not determine whether a *de facto* guardian who houses and provides for a child qualifies as a "guardian" for purposes of the statutory defense. Instead, we conclude that the district court properly denied Spotted Horse's proffered defense because no reasonable jury could have found that his use of force was "reasonable in manner and moderate in degree," as required by the statute.

## C.    Exclusion of Sexual Touching Evidence and Denial of Motion for Mistrial

Spotted Horse also argues the district court erred when it (1) prohibited him from introducing testimony that P.M. had engaged in sexual touching with boys at school and (2) denied his subsequent motion for a mistrial. Spotted Horse claims the court's ruling violated both his Fifth Amendment due process and Sixth Amendment confrontation rights. He asserts that the court compounded its constitutional violation when it revisited its *in limine* ruling and excluded evidence both parties believed would be admitted. Generally, "[w]e review a district court's interpretation and application of the rules of evidence de novo and its evidentiary rulings for abuse of discretion." United States v. Pumpkin Seed, 572 F.3d 552, 558 (8th Cir. 2009) (quoting United States v. Street, 531 F.3d 703, 708 (8th Cir. 2008)). We review whether an evidentiary ruling violates a constitutional right *de novo*. Id. (citing United States v. White, 557 F.3d 855, 857 (8th Cir. 2009)). We review the denial of a motion for mistrial for abuse of discretion. United States v. Hollins, 432 F.3d 809, 812 (8th Cir. 2005) (citing United States v. Flores, 73 F.3d 826, 831 (8th Cir. 1996)).

We first note that rulings *in limine* are not etched in stone but are in their very nature preliminary. As one commentator has noted: "[T]he writers and cases agree that a definitive ruling [*in limine*] does not bind the judge; she can alter the ruling in light of changing circumstances." C. Wright & K. Graham, 21 FEDERAL PRACTICE AND PROCEDURE 2D ED. § 5037.16 (2005). This power is inherent in the nature of rulings *in limine*, which are specifically designed to streamline the presentation of evidence and avoid unnecessary mistrials. The decisions, however, are necessarily made before the relevance and the import of the evidence is fully revealed. If the evidence changes the basis for the ruling, or even if the judge is simply convinced that his ruling *in limine* is erroneous, he retains the authority to change it. Any other rule would cause unnecessary mistrials rather than avoid them.

Moreover, a defendant's right to introduce evidence in his defense is not without limitation. United States v. Never Misses A Shot, 781 F.3d 1017, 1029 (8th Cir. 2015) (citing Pumpkin Seed, 572 F.3d at 559–60). "These limitations include 'concerns about harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" Id. (quoting Pumpkin Seed, 572 F.3d at 560). A court has discretion to exclude evidence under such limitations "as long as they are not 'arbitrary or disproportionate to the purposes they are designed to serve.'" Id. (quoting Pumpkin Seed, 572 F.3d at 560).

Based on our review of the record, we are satisfied that the district court did not exclude the evidence arbitrarily or hinder Spotted Horse's ability to present his defense. Despite the court's evidentiary rulings, Spotted Horse was able to elicit evidence about his motivations for disciplining P.M. Spotted Horse, P.M., C.S.H., and the children's aunt and grandmother each testified that Spotted Horse was concerned that P.M. was bothering, kissing, and "under the bleachers" with boys at school. Notwithstanding the court's ruling, C.S.H. briefly mentioned Spotted Horse's concerns about a boy touching P.M. at school. Two witnesses testified about Spotted Horse's concerns that P.M. would end up like his sexually active and pregnant teenage cousins if she did not change her behavior with boys. Given this testimony, any more detailed or graphic description of the touching was unnecessary to explain the reason for discipline and served no purpose other than to embarrass or diminish P.M. The district court did not err by excluding testimony about sexual touching nor abuse its discretion by denying Spotted Horse's motion for a mistrial.

## III.    Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____