# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-1123

_____

United States of America

*Plaintiff - Appellee*

v.

Randy Never Misses A Shot

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Pierre

_____

Submitted: October 9, 2014
Filed: March 31, 2015

_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

_____

SMITH, Circuit Judge.

Randy Never Misses a Shot appeals his convictions by a jury before the district court[1] for four counts of sexual abuse perpetrated against minors and one count of such abuse while registered as a sex offender. Never Misses A Shot raises several

_____

[1]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota.

arguments on appeal to invalidate his convictions. Never Misses A Shot contends that the district court erred by improperly coaching the government's counsel and admitting excess propensity evidence. We affirm.

## I. *Background*

In March 2013, a five-count superceding indictment was filed charging Never Misses A Shot with various sex offenses against minors. Count I and Count III alleged aggravated sexual abuse of a minor in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(A) and (D); Counts II and IV alleged abusive sexual contact of a child in violation of 18 U.S.C. §§ 1153, 2244(a)(1) and (5), and 2246(3); Count V alleged abusive sexual contact while registered as a sex offender in violation of 18 U.S.C. § 2260A. Counts I and II relate to the same victim referred to as J.N.M.A.S. Count III relates to a victim referred to as P.S. Count IV relates to a victim referred to as K.I.S. Count V is predicated on Count IV, as the sexual abuse alleged in Count IV happened while Never Misses A Shot was a registered sex offender for a previous sexual abuse conviction.[2]

## A. *Evidentiary Rulings*

At the pretrial hearing, the district court ruled on the admissibility of the government's propensity evidence under Rules 413 and 414 of the Federal Rules of Evidence; the court also ruled on the admissibility of Never Misses A Shot's evidence of prior molestations suffered by P.S. under an exception to Rule 412. First, the court found all six of the government's Rules 413 and 414 witnesses' testimony to be relevant, but acknowledged that it still had to conduct the Rule 403 balancing test, which considers whether its potential prejudicial effect substantially outweighs its probative value. Eventually, the court only admitted witnesses' testimony that alleged

---

[2]Never Misses A Shot pleaded guilty to one count of abusive sexual contact in 1998 for having sexual contact with his twelve-year-old female cousin.

Never Misses A Shot committed similar sexual abuse acts against similarly-aged victims.

The court, however, denied Never Misses A Shot's attempt to introduce evidence of a molestation P.S. suffered under Rule 412. The court rejected the argument that P.S.'s molestation should be admitted to show that P.S. may be attributing the actions of someone else to Never Misses A Shot. The court concluded that accepting this argument could open the door to wholesale interrogation of child victims about prior molestations.

B. *Trial Testimony Relating to Counts I and II*

At trial, J.N.M.A.S. offered her testimony supporting Counts I and II. She testified that between 1993 and 1997, Never Misses A Shot, her uncle, would visit her twice a week when she was around nine or ten years old. She recalled that Willard Fool Bull, Cecil Little Thunder, and Never Misses A Shot would take her into the woods and take turns having intercourse with her. Never Misses A Shot would also touch her breasts, buttocks, and genitals on other occasions.

On cross examination, Never Misses A Shot's counsel challenged J.N.M.A.S.'s testimony by highlighting past, potentially contradictory statements. First, J.N.M.A.S. told a criminal investigator in 1999 that Willard Fool Bull, Willard's brother Gervis Fool Bull, and Thomas Fool Bull sexually abused her, but she did not mention Never Misses A Shot. Also in 1999, while J.N.M.A.S. was living at the Wells Springs group home, she similarly told a staff member that Willard, Gervis, and Thomas Fool Bull sexually abused her, but she did not mention Never Misses A Shot. She also wrote a letter entitled "Please Tell by J.N.M.A.S." that identified Willard, Gervis, Thomas, and James Running Horse as men that had sexually abused her, but she again did not mention Never Misses A Shot. The letter described how the four men took her into the woods and abused her, similar to her trial testimony recounting the acts of Never Misses A Shot and others when they abused her. J.N.M.A.S. also told the staff at

Wells Springs of 12 other men who had sexually abused her, in addition to the four men aforementioned, but she did not mention Never Misses A Shot. In 1999, J.N.M.A.S. also told Dr. Lori Strong that Willard and Gervis had sexually abused her, but did not mention Never Misses A Shot. In 2001, J.N.M.A.S. told FBI Agent Joe Weir that Willard and Cecil Little Thunder would take her into the woods where Willard would abuse her. These accounts matched J.N.M.A.S's trial testimony, but they omitted the presence of Never Misses A Shot. In his closing question on cross examination, Never Misses A Shot's counsel asked "[d]on't you think it's possible that you are blaming [Never Misses A Shot] for something that someone else did to you?" J.N.M.A.S. replied "No."

On redirect examination, the government attempted to rehabilitate J.N.M.A.S.'s testimony. First, J.N.M.A.S. testified that she did tell someone about Never Misses A Shot's abuse, recalling that she told forensic interviewer Lora Hawkins that Never Misses A Shot had intercourse with her. Second, when the government asked why J.N.M.A.S. had not disclosed that Never Misses A Shot had abused her, J.N.M.A.S. stated that it was "[b]ecause he was still out there" and that "he wasn't, like, in jail. He was out-out." On recross examination, however, Never Misses A Shot's counsel pointed out that Gervis and Thomas Fool Bull, James Running Horse, and the 12 other men who allegedly abused her were not in jail and "still out there" at the time when J.N.M.A.S. disclosed the information to others.

Other witnesses' testimony was also helpful to Never Misses A Shot. Cecil Little Thunder testified that Willard took both J.N.M.A.S. and him into the woods on one occasion, parked the truck, took J.N.M.A.S. further into the woods, and left Little Thunder in the truck. Little Thunder denied that Never Misses A Shot was present and denied that he himself had any sexual contact with J.N.M.A.S. Further, Little Thunder testified that he had previously told an FBI agent that there was nothing going on between Never Misses A Shot and J.N.M.A.S., but rather that Willard was the one abusing J.N.M.A.S. Also, J.N.M.A.S.'s mother and grandmother testified that

they had no knowledge that Never Misses A Shot had any contact with J.N.M.A.S. during the relevant time frame and also stated their opinion that J.N.M.A.S. had an untruthful character.

### C. *Trial Testimony Relating to Count III*

P.S. testified regarding Count III that Never Misses A Shot sexually abused her in 2000 when she was about five years old. P.S. stated that while Never Misses A Shot was staying with her family, Never Misses A Shot grabbed her leg in the middle of the night when she was going to the kitchen for cereal, pulled her onto a bed in the living room, and "touched me on my vagina." P.S. testified that she screamed, but that nobody heard her. On cross examination, P.S. also testified that her uncle, Roland Stewart, was on the couch next to the bed in the living room within arms-length of where the sexual assault was alleged to have occurred and that her grandmother was in the bedroom next to the living room. P.S.'s grandmother, who is also Never Misses A Shot's mother, testified that she and P.S. slept in the bedroom in the small one-bedroom apartment and that Stewart and his girlfriend slept in the living room. Never Misses A Shot stayed with them for one night and slept in the kitchen. The grandmother testified that she did not see Never Misses A Shot touch P.S. Stewart, Never Misses A Shot's half-brother, testified similarly. Stewart indicated that he did not see or hear Never Misses A Shot touch P.S. in a sexual manner and that if Never Misses A Shot pulled P.S. into the living room, either he or his girlfriend would have seen or heard something because "[t]hey probably would have stepped on us because the living room is not very big."

### D. *Trial Testimony Relating to Count IV*

K.I.S., who was thirteen years old at the time of the trial, testified regarding Count IV that Never Misses A Shot sexually abused her in 2007 when she was about six years old. K.I.S. testified that Never Misses A Shot took her under a truck topper that was sitting on the ground, that he put his entire body on top of her moving it up

and down, and that she felt "his—like between his thighs" (later clarified to be his "private parts") on her "groin area."

After this testimony, the court called a sidebar and told the government that "the Court is going to have to direct a verdict on this, Counsel. You haven't shown sexual contact. . . . Is it over the clothing and is it under clothing? Is there any . . . physical contact between the two?" The government argued that K.I.S.'s testimony did provide the necessary facts to prove Count IV because "she said [she felt] 'his private parts' on her groin area, which would be his penis over the top [of clothing]." The court disagreed that the pre-sidebar testimony was sufficient and allowed the government the option of reopening its direct examination to establish the necessary facts over Never Misses A Shot's objection. On reopened direct examination, the government elicited testimony from K.I.S. that she felt Never Misses A Shot's genitals touch her genitals over their clothing.

After hearing three days of testimony, the jury returned a verdict convicting Never Misses A Shot on all counts. The district court sentenced Never Misses A Shot to serve 444 months' imprisonment followed by five years of supervised release.

## II. *Discussion*

Never Misses A Shot brings this appeal raising several points of alleged error for review. First, Never Misses A Shot argues that the district court took on the role of an advocate and coached the government in the sidebar following K.I.S.'s testimony on Count IV. Second, Never Misses A Shot argues that there was insufficient evidence to convict him on Counts I, II, and III. Third, Never Misses A Shot argues that the district court erred by not instructing the jury on the lesser-included offense of simple assault for Counts I–IV. Fourth, Never Misses A Shot argues that the district court erred in admitting the government's Rules 413 and 414 witnesses. Finally, Never Misses A Shot argues that the court erred by not admitting his Rule 412 evidence that P.S. was molested by another person.

A. *Count IV: Improper Sidebar*

First, Never Misses A Shot argues that the district court improperly allowed the government to reopen its direct examination of K.I.S., effectively instructing the government it needed to elicit additional facts to avoid a directed verdict. We review a district court's decision to allow either side to reopen its case-in-chief for abuse of discretion, "and we have previously characterized the discretion it exercises in doing so as wide." *United States v. Boone*, 437 F.3d 829, 836 (8th Cir. 2006) (quotation omitted). Additionally, when a trial judge's comments are alleged to have caused prejudice, we "'balance and weigh the comments of the judge against the overall fairness of the trial . . . [and conclude that] the balance is adversely tipped against the defendant in a criminal trial where the judge's role loses its color of neutrality and tends to accentuate and emphasize the prosecution's case.'" *United States v. Van Dyke*, 14 F.3d 415, 417–18 (8th Cir. 1994) (alterations in original) (quoting *United States v. Leuth*, 807 F.2d 719, 727 (8th Cir. 1986)).

The district court initiated a sidebar conference with counsel following the government's direct examination of K.I.S., its key witness on Count IV. The court warned the government that it may suffer a directed verdict on Count IV because the government's questions may not have elicited sufficient testimony establishing all the necessary elements of the charge. The court's interjection may have prompted the government to strengthen its case by directing counsel to elicit certain additional facts in its reopened direct examination. The jury, however, did not hear the court's comments. The jury's ignorance of the court's statements is an important factor in determining the actual prejudice suffered and whether the "trial judge probably so impressed the jury with his partiality to the prosecution that this became a factor in determining defendant's guilt." *Van Dyke*, 14 F.3d at 423; *see also United States v. Bland*, 697 F.2d 262, 263–66 (8th Cir. 1983) (reversing a criminal conviction when the trial judge unnecessarily questioned witnesses in the hearing of the jury, which showed a bias in favor of the prosecution). Unlike the cases cited by Never Misses

A Shot, the district court did not directly query the witness and "assume the mantle of an advocate." Consequently, we hold the district court's statements to government counsel do not amount to an abuse of discretion. The district court's sidebar did not unfairly influence the jury's ultimate determination of Never Misses A Shot's guilt.

Based on the evidence before it, the jury would likely have convicted Never Misses A Shot on Count IV without the sidebar and the brief reopening of the government's case that followed.[3] K.I.S.'s pre-sidebar testimony was sufficient to prove the necessary elements of Count IV. At the sidebar, and now on appeal, the government argued that the testimony of K.I.S. was sufficient to prove an over-the-clothes sexual contact between Never Misses A Shot's and K.I.S.'s genitals. K.I.S. testified that Never Misses A Shot was on top of her, that he moved his body up and down, and that she felt his "private parts" that was "between his thighs" on her "groin area." This testimony supplies sufficient evidence for a jury to convict on Count IV, which alleged an "intentional touching, either directly and through the clothing of [the victim's] genitalia." Thus, the court's alleged improper coaching was harmless because there would have been sufficient evidence from K.I.S.'s pre-sidebar testimony for the jury to convict Never Misses A Shot of Count IV.

District courts maintain "wide" discretion to allow a party to reopen its case-in-chief. Ironically, the reopening of direct examination here seems less consequential than our previous decisions upholding the district court's discretion in allowing a party to reopen its entire case. *See Boone*, 437 F.3d at 836–37 (finding no abuse of discretion when the district court allowed the government to reopen its case-in-chief

---

[3] At oral argument, counsel for Never Misses A Shot asserted that the jury could have perceived the court as being biased against Never Misses A Shot merely by the fact that the court itself called the sidebar, and after the sidebar, the government continued to question K.I.S. when it had earlier stated that it was finished with questioning. We disagree; the potential prejudice from the mere occurrence of the sidebar is too speculative to warrant reversal.

when witnesses unexpectedly stated that they planned to recant their previous grand jury testimony); *United States v. Rouse*, 111 F.3d 561, 573 (8th Cir. 1997) (finding no abuse of discretion when the district court allowed the government to reopen its case to establish a jurisdictional issue after the defendant had already moved for a judgment of acquittal).

## B. *Counts I, II, and III: Sufficiency of the Evidence*

Never Misses A Shot also argues that there was insufficient evidence for the jury to convict him of Counts I, II, and III. "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Washington*, 318 F.3d 845, 852 (8th Cir. 2003) (citation omitted). "[W]e will uphold the verdict if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." *United States v. Hamilton*, 332 F.3d 1144, 1149 (8th Cir. 2003) (citation omitted).

### 1. *Count III*

First, Never Misses A Shot argues that the testimony of P.S. was insufficient to convict him of Count III. The indictment alleged an intentional touching of the victim's genitalia "not through the clothing," and Never Misses A Shot argues that P.S.'s testimony did not clearly establish a skin-to-skin touching. Instead, she only testified that Never Misses A Shot "touched me on my vagina." The district court recognized the issue when stating that there was "no testimony about whether [the touching] was over the clothing or under the clothing, [or] whether it was skin-to-skin." Similarly, the jury recognized the same issue when it submitted a question to the court during its deliberation, asking "[i]n [P.S.]'s testimony: Was it revealed whether she was touched through clothing or skin-to-skin?" The district court instructed the jury to rely on its recollection of the testimony.

The jury could have interpreted P.S.'s testimony to refer to a skin-to-skin touching. *See, e.g.*, *Hamilton*, 332 F.3d at 1149 (upholding a jury verdict convicting the defendant of conspiracy to distribute crack cocaine because the evidence, "[w]hen viewed in a light favorable to the verdict," was adequate to support such a finding). The potential ambiguity in P.S.'s testimony could have been addressed on cross as well as direct examination. Taken in its context, a reasonable jury could have interpreted her testimony referencing Never Misses A Shot's touching of her genitals as being a skin-to-skin touching. Thus, we find there was sufficient evidence for the jury to convict on Count III beyond a reasonable doubt.

### 2. *Counts I and II*

Second, Never Misses A Shot argues that J.N.M.A.S.'s testimony was insufficient to convict him of Counts I and II. Never Misses A Shot argues that no reasonable jury could have found J.N.M.A.S. to be credible based on the extent of her impeachment. However, "[i]t is for the jury, not a reviewing court, to evaluate the credibility of witnesses and to weigh their testimony." *United States v. Mallen*, 843 F.2d 1096, 1099 (8th Cir. 1988) (citation omitted).

Never Misses A Shot thoroughly impeached J.N.M.A.S. using all of her previous disclosures to counselors and law enforcement from roughly 1999 through 2001 when she had disclosed several instances of sexual abuse by at least 16 men, but never mentioned Never Misses A Shot. The record shows that Never Misses A Shot's defense largely rested on the theory that J.N.M.A.S. was confusing Never Misses A Shot with another perpetrator because her testimony of being taken out into the woods and being abused by Never Misses A Shot was consistent with previous disclosures where she mentioned others performing similar acts, but omitted Never Misses A Shot. Additionally, Never Misses A Shot elicited testimony from J.N.M.A.S.'s mother and grandmother, both stating that they were not aware that

-10-

Never Misses A Shot had any contact with J.N.M.A.S. and that they believed J.N.M.A.S. to have an untruthful character.[4]

Despite the extensive impeachment of J.N.M.A.S., a reasonable jury could have found J.N.M.A.S. to be credible. On redirect, J.N.M.A.S. testified that she had not previously disclosed Never Misses A Shot's abuse to counselors and law enforcement "because he was still out there" and "he wasn't, like, in jail. He was out-out." Never Misses A Shot countered by pointing out that J.N.M.A.S. disclosed her abuse at the hands of several men to counselors and law enforcement who were also not in jail. Nevertheless, the jury may have concluded J.N.M.A.S. did not feel as threatened by them.

Appellate courts are not well-equipped to evaluate a jury's reasoning when making its credibility findings. "'The jury is the final arbiter of the witnesses' credibility, and we will not disturb that assessment.'" *United States v. Listman*, 636 F.3d 425, 430 (8th Cir. 2011) (quoting *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004)). As such, a jury's credibility determinations are "virtually unassailable on appeal." *United States v. Vickers*, 528 F.3d 1116, 1120 (8th Cir. 2008) (quotation omitted). Further, "[o]n numerous occasions we have upheld jury verdicts based solely on the testimony of cooperating witnesses." *United States v. Samuels*, 611 F.3d 914, 917 (8th Cir. 2010) (quoting *Vickers*, 528 F.3d at 1120). As a result, we find there was sufficient evidence for the jury to convict on Counts I and II based on their reliance on J.N.M.A.S.'s testimony and credibility.

C. *Counts I–IV: Instructing the Jury on the Lesser-Included Offense*

Next, Never Misses A Shot argues that the district court erred when it did not instruct the jury on the lesser-included offense of simple assault. We review the

_____

[4]The jury may have found J.N.M.A.S. to be credible while finding her mother and grandmother lacking in credibility.

district court's decision not to instruct the jury on a lesser-included offense for abuse of discretion. *See United States v. Tarnow*, 705 F.3d 809, 815 (8th Cir. 2013). "We will affirm so long as the instructions, taken as a whole, fairly and adequately submitted the issues to the jury." *United States v. Pumpkin Seed*, 572 F.3d 552, 562 (8th Cir. 2009) (quotation omitted).

> A district court acts within its discretion by giving an instruction on a lesser-included offense where: (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence which would justify conviction of a lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) there is mutuality, i.e., a charge may be demanded by either the prosecution or defense.

*Id.* at 562 (quotation omitted). In *Pumpkin Seed*, we upheld the district court's decision to instruct the jury of a lesser-included offense because these elements were met. *Id.* at 562–63. There, we found that a reasonable jury could have "reasonably believed" either the victim's testimony—resulting in a conviction of the original offense—or alternatively could have reasonably believed the defendant's testimony—resulting in a conviction of the lesser-included offense.

Here, the evidence presented in support of Counts I, II, and IV[5] do not conflict such that a jury could convict on either the original offense or a lesser-included offense depending on which line of testimony they found more credible. In Counts I and II, J.N.M.A.S. testified that Never Misses A Shot sexually abused her; Never Misses A Shot argued that he did not abuse her, but that J.N.M.A.S.'s memories

---

[5]The district court did instruct the jury on the lesser-included offense of simple assault for Count III because of the lack of clarity of whether Never Misses A Shot's touching of P.S. was over or under the clothing.

attributed another's conduct to him. If the jury believed J.N.M.A.S., they would convict Never Misses A Shot of aggravated sexual abuse of a minor and abusive sexual contact of a child. On the other hand, if they believed Never Misses A Shot, they would simply acquit; they would not convict of the alternative lesser-included offense of simple assault. Similarly, Never Misses A Shot did not present any alternative set of facts for Count IV but argued that the conduct did not occur. Thus, the court did not abuse its discretion by not instructing the jury of the lesser-included offense for Counts I, II, and IV.

### D. *Counts I–IV: Rule 413 and 414 Witnesses*

Never Misses A Shot next argues that the district court abused its discretion by allowing the testimony of six Rule 413 and 414 witnesses at trial. Never Misses A Shot alleges that because of the insufficiency of the rest of the government's case, the jury convicted solely because of the prejudice Never Misses A Shot suffered as a result of the propensity testimony. Further, he argues the district court erred by not weighing Rule 403 factors on the record. We review a district court's evidentiary rulings for abuse of discretion. *United States v. Rodriguez*, 581 F.3d 775, 793 (8th Cir. 2009). Reversal is warranted only if the district court's evidentiary rulings constitute a clear and prejudicial abuse of discretion. *United States v. Holy Bull*, 613 F.3d 871, 873 (8th Cir. 2010). Additionally, a district court is granted broad discretion in determining whether the admission of contested evidence could result in the possibility of unfair prejudice. *United States v. Medicine Horn*, 447 F.3d 620, 622 (8th Cir. 2006). "The district court's balance of the prejudicial and probative impacts of evidence is accorded great deference." *United States v. Crow Eagle*, 705 F.3d 325, 328 (8th Cir. 2013) (per curiam) (quotation omitted).

After the adoption of Rules 413 and 414 of the Federal Rules of Evidence, evidence that the defendant committed similar sexual assaults or child molestations respectively "may be considered on any matter to which it is relevant." Fed. R. Evid. 413(a), 414(a). "A relevant sexual assault is one committed in a manner similar to the

charged offense." *Rodriguez*, 581 F.3d at 796 (citation omitted). Once relevance is determined, admissibility hinges on whether the testimony's probative value is substantially outweighed by one or more of the factors enumerated in Rule 403, including "the danger of unfair prejudice." *United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir. 1997). In *Lecompte*, we overturned a motion in limine and deemed the testimony of a Rule 414 witness to be admissible because the testimony described sexual abuse by the defendant that was similar to the sexual abuse the defendant was charged with. *Id.* at 769–70. The same is true here. We find no abuse of discretion in the district court's relevance ruling because it concluded that each Rule 413 and 414 witness's testimony was similar enough to the conduct alleged in Counts I–IV to prove propensity.

We also find no abuse of discretion in the court's weighing of 403 factors. The record reflects that the district court properly weighed these factors when determining admissibility. For instance, when addressing the admissibility of the Rule 413 and 414 witnesses' testimony, the court accurately articulated that a relevance ruling "under Rule 413 and Rule 414 . . . [includes] a balancing test under Rule 403 where the Court has to determine whether the danger of unfair prejudice substantially outweighs the probative value of the evidence." Later, when Never Misses A Shot sought to exclude testimony, the court stated that it "finds preliminarily, that Rules 413 and 414 require admission of this and Rule 403 does not result in an application of the balancing test in a way where it ought not to come in." Regarding another witness, Never Misses A Shot argued for exclusion and "ask[ed] that the Court exercise its discretion under Rule 403 and prohibit it from being introduced." The district court "consider[ed], under Rule 403, keeping it out," but later decided to admit the testimony. Concerning the last witness, the court noted that "[t]he analysis under the Eighth Circuit precedent regarding admission under Rules 413 and 414 and the test under Rule 403 doesn't require that the testimony be identical or nearly identical to what's alleged in the indictment" before admitting the testimony. Our review confirms the district court correctly identified the applicable legal standards

and applied them, including consideration of the Rule 403 balancing test. The court's inclusion of a detailed Rule 403 analysis for every witness is not necessary nor is it practical.

We are troubled by the district court's admission of six Rule 413 and 414 witnesses. We have upheld the admissibility of three Rule 413 and 414 witnesses in the same case, however, in this case, six such witnesses injects cumulative evidence with little additional probative value. As this court approvingly noted in *United States v. Crow Eagle*, the district court properly limited the number of Rule 413 and 414 witnesses to three because of their relevance and because the district court remarked that "at some point it does seem enough is enough." 705 F.3d at 328; *see also United States v. Carter*, 410 F.3d 1017, 1022 (8th Cir. 2005) (upholding the district court's limiting to three Rule 413 and 414 witnesses); *United States v. Gabe*, 237 F.3d 954, 959–960 (8th Cir. 2001) (upholding the district court's allowance of two Rule 413 and 414 witnesses). Nonetheless, even assuming the district court abused its discretion, we conclude that, on this record, its error is harmless. First, the government's case was strengthened only marginally by the excess propensity evidence with little unfair prejudice to Never Misses a Shot; second, the government's case presented sufficient evidence apart from the excess propensity evidence for the jury to convict on all counts.[6]

E. *Count III: Rule 412 Evidence of Past Sexual Acts of Victims*

Finally, Never Misses A Shot appeals the district court's exclusion of certain evidence under Rule 412 of the Federal Rules of Evidence. Never Misses A Shot argues that the district court abused its discretion by not allowing him to introduce evidence that P.S. was molested by another perpetrator. Never Misses A Shot

---

[6]We state no inflexible rule that provides a maximum limit of Rule 413 or 414 witnesses that can testify but encourage district courts to continually balance all 403 factors.

intended to use the evidence to support his theory that another actor caused P.S.'s sexual knowledge, experience, and trauma, and as a result, P.S. was projecting false allegations of sexual abuse onto Never Misses A Shot. In sexual offense cases, Rule 412 "generally prohibits the admission of evidence concerning the alleged victim's past sexual behavior or alleged predisposition, subject to certain enumerated exceptions." *Pumpkin Seed*, 572 F.3d at 557. Here, Never Misses A Shot specifically argues that the exception under Rule 412(b)(1)(C) applies to his case because the exclusion of evidence "would violate [his] constitutional rights" under the Confrontation Clause. *See* Fed. R. Evid. 412(b)(1)(C); U. S. Const. amend. VI.

"In determining the admissibility of a victim's other sexual behavior under Rule 412(b)(1)(C), we start with the premise that defendants have a constitutional right under the Fifth and Sixth Amendments to introduce evidence in their defense. . . . [H]owever, . . . this constitutional right is not without limitation." *Pumpkin Seed*, 572 F.3d at 559–60 (citations omitted). These limitations include "concerns about harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 560 (quotation omitted). Evidence is permissibly excluded under such limitations as long as they are not "arbitrary or disproportionate to the purposes they are designed to serve." *Id.* (quotation omitted).

We conclude that the district court did not exclude the evidence arbitrarily. The district court reasoned that if it allowed evidence of P.S.'s molestation, every child victim that has been molested by someone other than the defendant would be subject to questioning on the conduct of the other molestation(s). The court's concern for the ramifications to future abuse victims is warranted. Additionally, the court shielded P.S. from the embarrassment and shame of making her prior molestation, unrelated to the instant charge, public. For these reasons, we find no abuse of discretion in the district court's decision not to apply Rule 412(b)(1)(C) in the manner Never Misses A Shot sought, thereby excluding evidence of P.S.'s other molestation.

-16-

### III. *Conclusion*

For the foregoing reasons, we affirm Never Misses A Shot's conviction. We find no reversible error in the district court's sidebar conversation with the government's counsel regarding its view of the state of the evidence or its admission of six Rule 413 and 414 witnesses.

_____