# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2978

_____

United States of America

*Plaintiff - Appellee*

v.

Lawrence James Hawkghost, also known as Lawrence James Dubray, Jr., also known as Lawrence James Smith

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 17, 2018
Filed: September 10, 2018

_____

Before SMITH, Chief Judge, BEAM and COLLOTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Lawrence Hawkghost, an enrolled member of the Rosebud Sioux Tribe, appeals his conviction for three counts of abusive sexual contact with A.W., a minor

and enrolled member of the Ponca Tribe of Nebraska. Hawkghost argues the district court[1] made erroneous evidentiary rulings. We affirm.

## I.    BACKGROUND

Hawkghost is married to A.W.'s grandmother, Marlene, and A.W. lived in close proximity to Hawkghost and Marlene on the Santee Sioux reservation between 2013 and 2014, when A.W. was 12 then turned 13 and in the sixth grade. In December 2015 interviews with an FBI investigator and a representative from the Child Advocacy Center (CAC), A.W. alleged that in January 2014, while in a bathroom at Marlene's house, Hawkghost rubbed her buttocks and genital area, over her clothing. This was the only allegation A.W. made at that particular point in time, and during these two interviews A.W. stated that this was the entire extent of what Hawkghost had done to her. Based upon this report, on September 21, 2016, Hawkghost was charged in a single indictment with sexual contact with a minor. In November 2016, as the charge was pending, A.W. was again interviewed, but by a different CAC interviewer.[2] During that interview, A.W. indicated that other incidents, previously undisclosed, had been perpetrated by Hawkghost during the time she lived near Hawkghost (all when she was in the sixth grade). She stated that Hawkghost took her

---

[1]The Honorable Robert F. Rossiter, Jr., United States District Judge for the District of Nebraska.

[2]Although not disclosed by A.W. at the November 2016 CAC interview, A.W. had been abused by two other adults after the alleged 2014 abuse by Hawkghost. The government filed an indictment in April 2017 against Jerome Sheridan, alleging that in the summer of 2016, Sheridan caused A.W. to touch his penis through his clothing, and that in October 2016, he digitally penetrated A.W. Also in April 2017, a superseding indictment was filed against Silas Kitto, alleging that Kitto engaged in sexual intercourse with A.W. in April 2016. A.W. disclosed these allegations to CAC counselors in March 2017, and the Kitto and Sheridan indictments were disclosed to the defense just prior to the May 2017 trial.

hand and pressed it against his penis, skin to skin. In another incident, A.W. indicated that Hawkghost began kissing A.W. on a bed and he began rubbing his erect penis, through clothing, against A.W.'s genital area. During this same incident, he fondled her breasts, skin to skin. In December 2016, based upon this new information, the grand jury returned a superseding indictment, adding three additional counts of abusive sexual contact with a minor.

Defense counsel wanted to pursue a defense that because Kitto and Sheridan had abused A.W. between the time she made the December 2015 and November 2016 allegations against Hawkghost, she was transferring her trauma from the other assaults and placing it on Hawkghost. Hawkghost argues this transfer theory is bolstered by the fact that during the November 2016 CAC interview, A.W. did not disclose the contemporaneous abuse by Sheridan she had recently endured. At a pretrial hearing, the government moved to exclude the evidence of the other two assualts under Federal Rule of Evidence 412. After a hearing, the district court ruled in limine under both Rule 412 and Rule 403 that Hawkghost was prohibited from cross-examining A.W. about the abuse perpetrated by Sheridan, and the CAC and FBI interviewers about Kitto and Sheridan.[3] The court reserved further ruling for trial, and then at trial the court upheld its previous ruling that Hawkghost was prohibited from raising the issue of the unrelated assaults on A.W. On May 10, 2017, the jury returned a guilty verdict on three of the four counts in the indictment, and in September 2017, Hawkghost was sentenced to fifteen months on each count, to be served consecutively. Hawkghost appeals, challenging the Rules 403 and 412 rulings.

---

[3]Defense counsel indicated at this hearing that he did not seek to cross-examine A.W. about the assault perpetrated by Kitto.

## II. DISCUSSION

We review the district court's evidentiary rulings for an abuse of discretion, and its rulings on the constitutional right of the defendant to present a complete defense de novo. United States v. Pumpkin Seed, 572 F.3d 552, 558 (8th Cir. 2009). On appeal, Hawkghost argues that the evidence is admissible under the exception in Rule 412(b)(1)(C),[4] and additionally cites United States v. Bear Stops, 997 F.2d 451 (8th Cir. 1993), in support of his arguments that he should be allowed to explore evidence of A.W.'s other sexual abuse. Hawkghost further contends that the district court abused its discretion in applying Rule 403 (excluding evidence when its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading the jury).

Rule 412, known colloquially as the "rape shield" rule, states in pertinent part:

(a) Prohibited Uses. The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct: (1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition. (b) Exceptions. (1) Criminal Cases. The court may admit the following evidence in a criminal case: . . . (C) evidence whose exclusion would violate the defendant's constitutional rights.

Fed. R. Evid. 412.

We have recently applied Rule 412 to exclude similar evidence. In United States v. Never Misses a Shot, 781 F.3d 1017 (8th Cir. 2015), the defendant in a child molestation case wanted to introduce evidence that the victim was also molested by

---

[4]Hawkghost also cited the Rule 412(b)(1)(A) exception to the district court but does not appear to advance that argument on appeal.

another adult, for the purpose of supporting the defendant's theory that another actor caused the victim's "sexual knowledge, experience, and trauma, and as a result, [the victim] was projecting false allegations of sexual abuse onto [the defendant]." Id. at 1028. The Never Misses a Shot defendant wanted the evidence admitted under the exception in Rule 412(b)(1)(C)–his constitutional right to present a complete defense was hindered without the ability to adduce this prior molestation evidence. Id. at 1029. After noting what Rule 412 prohibits, the court stated:

> We conclude that the district court did not exclude the evidence arbitrarily. The district court reasoned that if it allowed evidence of P.S.'s molestation, every child victim that has been molested by someone other than the defendant would be subject to questioning on the conduct of the other molestation(s). The court's concern for the ramifications to future abuse victims is warranted. Additionally, the court shielded P.S. from the embarrassment and shame of making her prior molestation, unrelated to the instant charge, public. For these reasons, we find no abuse of discretion in the district court's decision not to apply Rule 412(b)(1)(C) in the manner [the defendant] sought, thereby excluding evidence of P.S.'s other molestation.

Id.

Hawkghost argues that he wanted to use the proffered evidence at trial for a different purpose than the defendant in Never Misses a Shot–that instead of offering the evidence to show generalized knowledge, he wanted to show the unique facts of A.W.'s experience, including why she reached out for help at the time that she did in November 2016, why she disclosed the specific facts that she did, and her alleged unwillingness to disclose the "full truth" in order to protect another abuser. However, similar to Never Misses a Shot, a key component of Hawkghost's argument is that A.W. was "projecting false allegations" from the other abusers onto Hawkghost. Id. at 1028. Absent a compelling reason to the contrary, and due to the similarities between the cases, Never Misses a Shot controls the outcome in this case.

Hawkghost advances that this case is controlled by Bear Stops. In Bear Stops, the six-year-old victim was sexually assaulted by three people (other than the defendant) around the same time as the alleged incident with the defendant. The district court limited evidence of this other assault under Rule 412. We reversed, and held that the evidence was required by the Constitution to be admitted pursuant to Rule 412 because it was relevant in "establish[ing] an alternative explanation for why [the victim] exhibited the behavioral manifestations of a sexually abused child," which could potentially exculpate the defendant. 997 F.2d at 454-56. We think Bear Stops is sufficiently distinguishable, as it involved a very young child victim who exhibited specific post-assault behavioral manifestations. Since the other incident of abuse happened around the same time, it was probative enough to be admitted pursuant to the defendant's Fifth and Sixth Amendment rights to present a defense, as its admission was the accused's only avenue to explain away the young victim's unusual behavior. Id. at 454, 457.

Here, Hawkghost's right to present his defense was not unduly, nor unconstitutionally, hindered by his inability to cross-examine A.W. and the interviewers about later-occurring sexual abuse by other adults. There was no evidence that A.W. was exhibiting any unusual behavioral characteristics, and indeed, the primary reason proffered for use of the evidence during the offer of proof at trial was to show that A.W. was not a truthful person because she did not disclose all of her sexual abuse to the CAC counselors, and that she essentially perjured herself at trial by repeating that testimony–i.e., stating that she had nothing else to tell the CAC interviewers. However, Hawkghost's defense counsel was able to elicit testimony from A.W. wherein she admitted that she did not tell the entire truth to the first CAC counselor and to a law enforcement investigator because she did not disclose all the incidents of Hawkghost's abuse at that time (in December 2015), even though all of the abuse had already happened by that time. A.W. testified at least four times that she had lied to both law enforcement and the first CAC counselor. Hawkghost was also able to question the second CAC counselor about the unusual timing of the

accusations and the gap between them. Thus, we find Hawkghost's constitutional right to present a defense was not violated and the district court did not err in holding that this evidence was inadmissible under Rule 412. See Never Misses a Shot, 781 F.3d at 1028-29 (shielding victims from embarrassment and shame due to other abuse is within the boundaries of Rule 412).

Further, we find that the district court properly excluded the evidence and cross-examination under Rule 403. Any possible probative value of the evidence of A.W.'s molestation by other perpetrators was substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading the jury. In the instant case, the probative value was minimal given that A.W. was not exhibiting the unusual behaviors exhibited in Bear Stops, and further because evidence regarding A.W.'s truthfulness, or lack thereof, was already in front of the jury. As indicated, Hawkghost was able to question both A.W. and the CAC counselor extensively about why there was such a gap between the first allegation in the December 2015 interview and the later allegations in the November 2016 interview, when the alleged conduct took place all around the same time in 2014. The jury knew of the timing gap between the accusations, and allegations that A.W. was not completely truthful with her first CAC counselor and law enforcement. The danger of admitting such evidence in a case like this is that a child victim would be subjected to the embarrassment and shame of making her other unrelated molestations public. The district court did not abuse its discretion in ruling the evidence inadmissible under Rule 403. See Pumpkin Seed, 572 F.3d at 558 (according much deference to the district court's balancing of the probative value and prejudicial impact of the evidence).

## III.   CONCLUSION

We affirm the district court.

_____