**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 3, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JERRY WAYNE ASBILL,

Defendant - Appellant.

No. 24-7052
(D.C. No. 6:22-CR-00093-KWR-1)
(E.D. Okla.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **HOLMES**, Chief Judge, **MORITZ** and **ROSSMAN**, Circuit Judges.
_____

Jerry Asbill challenges his jury convictions for sexual abuse, arguing the district court committed constitutional and evidentiary error by limiting his cross-examination of the victim. For the reasons explained below, we affirm.

### Background[1]

In 2014, Asbill invited his girlfriend and her two children to move into his home in Stillwell, Oklahoma. The girlfriend's daughter—T.C.—was five at the time.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[1] We summarize "the evidence presented at trial, viewed in the light most favorable to the [split] verdict" in this case. *United States v. Dermen*, 143 F.4th 1148, 1164 n.1 (10th Cir. 2025).

According to T.C., Asbill began sexually abusing her soon after they moved in with him.

When Asbill and T.C.'s mother broke up in 2018, the family moved out of his house. But Asbill maintained contact with T.C., and in November 2018, just after T.C.'s tenth birthday, Asbill took her on a hunting trip. Rather than staying at Asbill's parents' house a quarter mile from the deer stand, they stayed at a hotel eleven miles away. Asbill explained this was because his father had health issues and was frequently up in the middle of the night. Once they got into the hotel room, Asbill sexually assaulted T.C. The assault came to light in September 2019, when T.C. began having flashbacks of the abuse and told her mother what happened.

A grand jury indicted Asbill on five counts of aggravated sexual abuse of a minor in Indian country. Before trial, Asbill moved to offer evidence that T.C. may have been sexually abused by someone else. In support, he pointed to records from an Oklahoma Department of Human Services (DHS) investigation purportedly showing that "T.C. told a relative and/or family friend that her brother . . . was engaging in sexual behavior with her while at a family reunion" in August 2018. R. vol. 2, 10. Two witnesses had reported this incident to DHS, and Asbill said they "would testify that T.C. told them her brother . . . kept trying to stick his hands down her shorts and that he has been 'doing things to her.'" *Id.* The DHS report associated with its investigation also suggested that another child may have witnessed the incident between T.C. and her brother. Relying on Federal Rule of Evidence 412—the federal rape shield—the district court denied Asbill's motion. It noted that DHS deemed the

2

reported incident unsubstantiated and that the incident involved very different conduct from what was alleged in the indictment.

The case proceeded to trial. In opening statements, defense counsel mentioned that DHS interviewed T.C. about an allegation unrelated to Asbill. The government objected, citing the court's previous ruling on the DHS report. Defense counsel explained that he did not plan to go into the details of the incident. Rather, his point was that "she had an opportunity to disclose" when she "was asked about sexual abuse[,] and she claimed that there was none." R. vol. 3, 40. The district court sustained the government's objection and directed the defense to seek leave before raising the issue in front of the jury again.

Defense counsel asked to return to the topic during T.C.'s cross-examination. At sidebar, he again argued that it was important for the jury to hear that T.C. had an opportunity to disclose but instead "seem[ed] like" she denied "any sexual abuse of any kind." *Id.* at 95. Specifically, he proffered that there was an accusation unrelated to Asbill, that T.C. was interviewed by DHS about it, and when asked if sexual abuse "had ever occurred," T.C. "denied any sexual abuse." *Id.* at 96. But he did not attempt to enter the DHS report itself into the record.

Finding little relevance and the risk of juror confusion too great, the district court instructed defense counsel not to mention DHS or the report. But it allowed defense counsel to ask T.C. about other opportunities to disclose abuse and to use the DHS report to refresh her recollection. Later, when asked, T.C. confirmed that she had an opportunity to disclose and did not.

3

Defense counsel also attempted to impeach T.C. with prior inconsistent statements. On direct, T.C. testified that Asbill raped her on the day they checked into the hotel, also saying that was the last time he touched her. Defense counsel pointed out that in an earlier forensic interview, T.C. said Asbill assaulted her on the day they checked out. After reviewing the transcript of her interview, T.C. acknowledged having said so but explained "that couldn't have been correct" because there wasn't enough time before checkout. *Id.* at 84.

Defense counsel next turned to statements T.C. made at a state-court preliminary hearing. When T.C. said that she did not remember her testimony, defense counsel gave her a four-page excerpt of the transcript to refresh her recollection. The excerpt—which was later entered into the record—only included testimony about the day they checked out of the hotel, not the day they checked in. Defense counsel asked, "when you testified at the preliminary hearing, you told them that you actually didn't have sex at the hotel, right?" *Id.* at 86. T.C. responded that she did not remember saying that, so defense counsel directed her to the transcript. She "read it, and it didn't help." *Id.* at 87. And as defense counsel pressed on with questions about the preliminary-hearing testimony, the government raised several improper-impeachment objections, each of which the court sustained.

Finally, the government objected as to relevance when defense counsel asked T.C. whether she had previously shot the gun that Asbill gave her to hunt. Defense counsel explained that "if . . . Asbill had been brutally raping her . . . I think it would

4

be maybe a little more likely that he wouldn't have given her a gun." *Id.* at 99. The district court sustained the objection.

The jury convicted Asbill of sexually abusing T.C. at the hotel but acquitted on counts related to T.C.'s allegations of earlier abuse. The district court sentenced him to life in prison and five years of supervised release.

Asbill appeals.

## Analysis

Asbill mounts both evidentiary and constitutional challenges to the district court's limits on T.C.'s cross-examination. We review evidentiary decisions limiting cross-examination for abuse of discretion. *United States v. Jones*, 213 F.3d 1253, 1261 (10th Cir. 2000). "However, 'to the extent the challenge to the exclusion of evidence proffered by the defendant is based on a constitutional objection, we review the district court's ruling excluding that evidence de novo.'" *United States v. A.S.*, 939 F.3d 1063, 1071 (10th Cir. 2019) (cleaned up) (quoting *United States v. Pablo*, 696 F.3d 1280, 1297 (10th Cir. 2012)).

Asbill contends the district court erred by limiting his questioning of T.C. about (1) the allegations in the DHS report, (2) her prior inconsistent statements, and (3) the gun. We dispense with each of his arguments below.

## I.     Allegations in the DHS Report

Asbill argues the district court erred by limiting his cross-examination of T.C. on the DHS report under Rule 412. Under that rule, "evidence offered to prove that a victim engaged in other sexual behavior" or "to prove a victim's sexual

5

predisposition" is inadmissible in a proceeding involving alleged sexual misconduct.[2]

Fed. R. Evid. 412(a). There is, however, an exception in criminal cases that allows

such evidence in if its "exclusion would violate the defendant's constitutional rights."

Fed. R. Evid. 412(b)(1)(C). These elements of Rule 412 "pit[] against each other two

exceedingly important values—the need to safeguard the alleged sexual[-]assault

victim against the invasion of privacy, potential embarrassment[,] and sexual

stereotyping that is associated with public disclosure of intimate sexual details, and

the need to ensure that criminal defendants receive fair trials." *A.S.*, 939 F.3d at 1071

(cleaned up) (quoting *Pablo*, 696 F.3d at 1297).

Asbill argues he was entitled to introduce the abuse allegations in the DHS

report under Rule 412(b)(1)(C)'s constitutional-rights exception. Specifically, he

contends excluding evidence that T.C. was abused by someone else violated his

rights to present a complete defense and to confront the witnesses against him. "The

Constitution guarantees criminal defendants a meaningful opportunity to present a

---

[2] Asbill broadly argues that Rule 412 does not apply to the DHS report because unsubstantiated allegations are not evidence of "other sexual behavior" or "sexual predisposition." Fed. R. Evid. 412(a). For support, he points to the rule's advisory committee notes, which state that "[e]vidence offered to prove allegedly false prior claims by the victim is not barred." Fed. R. Evid. 412 advisory committee's note to 1994 amendments. However, we find no support for Asbill's suggestion that an unsubstantiated report equates to a false report. Rather, "unsubstantiated" in this context simply means that the investigators were not able to prove the abuse occurred. *Compare Unsubstantiated*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/unsubstantiated [https://perma.cc/L6ZY-Z44B] (last visited Aug. 25, 2025) (defining "unsubstantiated" as "not proven to be true"), *with False*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/false [https://perma.cc/7F5C-A4JY] (last visited Aug. 25, 2025) (defining "false" as "intentionally untrue" or "not true").

complete defense . . . ." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (cleaned up) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)); *see also United States v. Solomon*, 399 F.3d 1231, 1239 (10th Cir. 2005) ("The right to present a defense arises under the Fifth and Fourteenth Amendment right to due process and the Sixth Amendment right to compulsory process."). And the Sixth Amendment's Confrontation Clause guarantees a defendant's right "to be confronted with the witnesses against him." U.S. Const. amend. VI. That right can be violated when defense counsel is not allowed "to 'expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.'" *Delaware v. Fensterer*, 474 U.S. 15, 19 (1985) (quoting *Davis v. Alaska*, 415 U.S. 308, 315 (1974)).

Yet a defendant's rights to present a defense and confront witnesses are "not without limits"—they are "constrained by the twin prongs of relevancy and materiality." *Solomon*, 399 F.3d at 1239 (applying these prongs in complete-defense challenge); *see also United States v. Powell*, 226 F.3d 1181, 1199 (10th Cir. 2000) (applying the same in Confrontation Clause challenge). For the relevance inquiry, we examine "whether more traditional factors such as prejudice, issue and jury confusion weigh in favor of excluding the testimony." *Powell*, 226 F.3d at 1199 (quoting *Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997)). And for materiality, we query whether the testimony "was of such an exculpatory nature that its exclusion affected the trial's outcome." *Id.* (quoting *Richmond*, 122 F.3d at 872).

It follows, then, that evidence of prior sexual conduct should be admitted where "relevant and probative on a central issue of sexual[-]offense charges." *Id.* at 1198. Successful invocation of the Rule 412(b)(1)(C) exception is rare. For example, in the Confrontation Clause context, we have observed that "the class of cases in which evidence otherwise barred by the rape[-]shield statute has been deemed to be constitutionally compelled is restricted to those which demonstrate a theory of witness bias or motive to lie." *A.S.*, 939 F.3d at 1073 (quoting Rosanna Cavallaro, *Rape Shield Evidence and the Hierarchy of Impeachment*, 56 Am. Crim. L. Rev. 295, 299 (2019)).

In denying Asbill's pretrial motion, the district court rejected Asbill's argument that questioning T.C. about the DHS report would reveal her motive to lie to protect her family. The district court also cast doubt on the probative value of a DHS report that was unsubstantiated. And it questioned the report's relevance to T.C.'s knowledge and vocabulary, considering the allegations there—that T.C.'s "brother 'put his hands down' her pants"—were "far different" from those against Asbill. R. vol. 2, 22.

On appeal, Asbill argues the alleged molestation was both relevant and material. We need reach only relevance, for which Asbill offers several theories. He claims the allegations would have revealed T.C.'s motive to lie, accounted for her knowledge of sexual acts, and explained her mental-health struggles at the time she accused Asbill. Regarding T.C.'s motive to lie, Asbill first speculates in his opening brief that T.C. "may have been trying to do something to change her living situation

and escape her real abuser without naming that person." Aplt. Br. 37. But this speculation is not grounded in the record, as T.C. was no longer living with Asbill when she reported the abuse. So there is no reason to believe that she would have been moved from her current home because of the disclosure.

Slightly more convincing is Asbill's argument that T.C. lied to protect her brother. But that argument also runs headfirst into relevance problems. As the district court pointed out, the DHS report carried little probative value because it was unsubstantiated, and the alleged behavior was very different than the graphic incidents of Asbill's abuse that T.C. described. On the other hand, the risk of jury confusion and undue delay was significant. *See United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998) (explaining these risks "arise[] when circumstantial evidence would tend to sidetrack the jury into consideration of factual disputes only tangentially related to the facts at issue" in the case at hand). Evidence of the DHS report could have opened the door to a side trial on the brother's guilt, an issue unrelated to Asbill's guilt.

Moreover, the cases on which Asbill relies for admitting the allegations are distinguishable. It is true that in *United States v. Begay*, we held that a child-sex-abuse defendant should have been allowed to cross-examine a victim about past sexual abuse by another perpetrator. 937 F.2d 515, 518–21 (10th Cir. 1991). Yet there, the prior sexual abuse had higher probative value because it was substantiated—the other perpetrator pleaded guilty. *Id.* at 519. Evidence of the prior

9

abuse was also necessary to explain the victim's physical injuries, an issue not applicable here. *Id.* at 523.

Asbill also directs us to *United States v. Bear Stops*, where the Eighth Circuit held that a defendant should have been able to introduce "uncontroverted evidence" of the victim's prior assault to explain why she exhibited "behavioral manifestations of a sexually abused child." 997 F.2d 451, 454, 457 (8th Cir. 1993). Unlike the "uncontroverted evidence" in *Bear Stops*, which required no "distracting mini-trial," the unsubstantiated allegations we have here could lead to jury confusion or distraction. *Id.* (cleaned up). And even so, in more recent cases, the Eighth Circuit has excluded evidence of child victims' prior abuse, citing a concern that "every child victim that has been molested by someone other than the defendant would be subject to questioning on the conduct of the other molestation(s)." *United States v. Never Misses A Shot*, 781 F.3d 1017, 1029 (8th Cir. 2015); *see also id.* at 1028 (upholding exclusion of child victim's abuse history to prove alternate source of "sexual knowledge, experience, and trauma" without discussing *Bear Stops*); *United States v. Hawkghost*, 903 F.3d 774, 778 (8th Cir. 2018) (upholding exclusion of child victim's other sexual abuse and distinguishing *Bear Stops* as permitting evidence where young child's unusual behavior could be explained no other way).

Because Asbill cannot show the unsubstantiated allegation of other sexual abuse was relevant, the district court did not violate his constitutional rights or Rule 412(b)(1)(C) by limiting his cross-examination of T.C. on the DHS report.

## II.    Prior Inconsistent Statements

Asbill next argues the district court erred by limiting cross-examination of T.C. about her statements to a DHS investigator and at a state-court preliminary hearing.

As outlined above, a defendant's constitutional rights to present a defense and confront witnesses against him are not absolute. *See Solomon*, 399 F.3d at 1239. "[T]rial judges retain wide latitude . . . to impose reasonable limits" on cross-examination of witnesses. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Those constraints apply even though the rules of evidence permit "[a]ny party . . . [to] attack"—that is, impeach—a "witness's credibility." Fed. R. Evid. 607. A common path to impeachment is through "contradiction, which occurs when an opposing party endeavors to show that a fact to which the witness has testified is not true." *United States v. Cerno*, 529 F.3d 926, 934 (10th Cir. 2008). Often, this can be achieved by introducing extrinsic evidence of a witness's prior inconsistent statements. Under Federal Rule of Evidence 613(b), extrinsic evidence of a witness's prior inconsistent statement may be admitted "if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires."[3]

We begin with Asbill's arguments about the statement to DHS. Recall that the district court excluded T.C.'s purported statement to DHS that she had never been

---

[3] This rule was amended in 2024, so we quote from the 2011 version in effect during Asbill's trial.

sexually abused on grounds that it could mislead or confuse the jury. Asbill contends

he should have been allowed to ask T.C. about her statement because it was a prior

inconsistent statement—she testified at trial that Asbill had already abused her by the

time of her DHS interview. Yet in the interview, Asbill maintains, she denied any

abuse. And he argues he should have been allowed to bring in extrinsic evidence of

T.C.'s prior denial because she would have been able "to explain or deny the

statement" on the stand. Fed. R. Evid. 613(b). Anticipating a Rule 412 problem,

Asbill also insists a *denial* of abuse is not evidence of past sexual conduct or sexual

predisposition.[4]

But the district court was well within its discretion to exclude T.C.'s prior

denial. Defense counsel never entered the DHS report into the record. And he never

asked to cross-examine T.C. outside the presence of the jury. *See United States v.*

*Adams*, 271 F.3d 1236, 1241 (10th Cir. 2001) (describing this as the "most desirable"

method for testimonial proffer). Instead, Asbill suggests we rely on defense counsel's

avowal regarding T.C.'s testimony. Yet we have described this as the "least

favorable[] method for making an offer of proof of testimony" because of its

tendency to "fall short of the standard required by the rules of evidence." *Id.* at 1241–

---

[4] Below, Asbill never suggested a denial of abuse fell outside the ambit of Rule 412. Nor did he suggest T.C.'s denial was a prior inconsistent statement or cite Rule 613(b) as grounds for admission. Therefore, Asbill forfeited this argument, and waived it by failing to argue for plain error on appeal. *United States v. Roach*, 896 F.3d 1185, 1192 (10th Cir. 2018). Nevertheless, because the government did not raise this preservation issue, we consider the merits. *See United States v. Heckenliable*, 446 F.3d 1048, 1049 n.3 (10th Cir. 2006) (explaining government "waived the waiver" by failing to argue it).

42. Defense counsel's uncertain proffer evinces these shortcomings: he stated that he "*believe*[*d*] that she denied any sexual abuse [seemingly of any kind] at that time." R. vol. 3, 94 (emphasis added). From this record, we simply cannot determine what T.C. was asked and how she responded, so we likewise cannot conclude that the district court abused its discretion in excluding that testimony.

We next consider T.C.'s statements at the state-court preliminary hearing. In her trial testimony, T.C. said that Asbill raped her on the day that they checked into the hotel. Defense counsel pointed out that in a forensic interview, T.C. said Asbill assaulted her on the day they checked out. T.C. acknowledged this and explained that her prior statement was incorrect because of the timing of checkout. Defense counsel then brought up T.C.'s testimony from the state-court preliminary hearing, asking her if she remembered testifying that Asbill did not rape her at the hotel. When T.C. said she did not recall her testimony, defense counsel gave her a short excerpt in which she described Asbill inappropriately touching her on the day they checked out. T.C. acknowledged the veracity of the transcript. This exchange occurred next:

Q:  [W]hen you testified at the preliminary hearing, you told them that you actually didn't have sex at the hotel, right?

A:  I don't remember telling her that.

Q:  . . . [W]ould reading the page I originally asked you to look at to see if it would refresh your memory, would that help you out?

A:  I read it, and it didn't help.

*Id.* at 86–87.

13

Defense counsel returned to the transcript, asking, "There was a question that asked how long you slept for[,] and your answer was thirty minutes, correct?" *Id.* at 87. The government objected for improper impeachment, and the court sustained the objection. Then, defense counsel asked if T.C. testified that she "did not have actual sex at the hotel" on the day of checkout. *Id.* at 88. The district court sustained the government's improper-impeachment objection. Again, defense counsel asked, "[W]hen you testified at the preliminary hearing, you did not testify as to any penetration occurring at the [hotel], correct?" *Id.* The government objected on improper-impeachment and asked-and-answered grounds, and the court sustained the objection.

Asbill argues that the district court improperly limited his use of the preliminary-hearing transcript to impeach T.C. Although "[p]rior inconsistent statements are an accepted means of impeaching a witness," a defendant "must first lay an adequate foundation." *United States v. Flaming*, 133 F.4th 1011, 1028 (10th Cir. 2025). That means demonstrating that prior statements "were in fact inconsistent with [the witness's] trial testimony." *Id.*

Asbill repeatedly missed that important first step.[5] For example, before asking T.C. whether she testified at the preliminary hearing that she slept for thirty minutes,

---

[5] Because Asbill failed to first establish inconsistency, we need not address his contention that the preliminary-hearing transcript was admissible not only to impeach T.C., but also for substantive purposes. *See* Fed. R. Evid. 801(d)(1)(A) (providing for admission of prior inconsistent statement as substantive evidence if statement "was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition"). Asbill also never argued for admission on those grounds below. In fact,

defense counsel needed to establish an inconsistency. To do so, he could have asked, "How long did you sleep when you returned to the hotel after hunting?" Then, if T.C. provided a different answer than she did at the preliminary hearing, defense counsel could introduce the transcript as a prior inconsistent statement. But defense counsel never asked how long T.C. slept, so there was no inconsistency to impeach.

Defense counsel made a similar mistake in laying a foundation for T.C.'s preliminary-hearing testimony about the hotel assault. On direct, T.C. said that Asbill raped her on the day they checked into the hotel, not the day they checked out. Similarly, at the preliminary hearing, T.C. testified that Asbill did not rape her just before checkout; instead, she said he inappropriately touched her at that time. As the government points out, there is no inconsistency between these two statements. Asbill could have assaulted T.C. the first day and inappropriately touched her the next day. Pushing back, Asbill argues that T.C. testified to only one assault at the preliminary hearing. But that is not in the record before us. The four-page excerpt includes only her testimony about the day of checkout. Asbill reframed his point at oral argument, arguing the mismatch was in T.C.'s saying the rape after checking in was "the last time" Asbill touched her. R. vol. 3, 51. In contrast, at the preliminary hearing, she said he touched her on the day they checked out. But Asbill did not explain this to the court below, nor did he make this argument in his opening or reply briefs. *See United States v. Abdenbi*, 361 F.3d 1282, 1289 (10th Cir. 2004) ("[I]ssues

---

when defense counsel asked to enter the transcript into the record for appellate purposes, he explicitly stated it was "to impeach" T.C. R. vol. 3, 280.

may not be raised for the first time at oral argument."). We decline to consider it now.

Nevertheless, Asbill contends he *did* establish inconsistencies because "a prior assertion of a fact" is "inconsistent with a present assertion of a lack of memory." *United States v. McGirt*, 71 F.4th 755, 759 (10th Cir. 2023). However, *McGirt* discussed the inconsistency that arises when a witness claims no memory of an event at trial, but previously made affirmative statements about that event. *Id.* In contrast, here, T.C. never testified that she did not remember the hotel assault. Rather, she said that she did not remember her specific testimony at the preliminary hearing. And defense counsel's short, out-of-context excerpt did not refresh her recollection.

In sum, defense counsel repeatedly failed to establish inconsistencies between T.C.'s testimony at trial and at the preliminary hearing. And the record does not support Asbill's contention that T.C. previously denied any sexual abuse, a statement that the district court was also well within its discretion to exclude. The court's limitations do not constitute error.

## III. T.C.'s Testimony About the Gun

Finally, Asbill argues the district court abused its discretion by excluding T.C.'s testimony that he gave her a gun after the alleged rape at the hotel. But a closer review of the trial transcript reveals the district court did not exclude this testimony. Defense counsel asked if Asbill gave her a gun, and T.C. responded, "A .22." R. vol. 3, 98. Then, defense counsel asked if she had ever shot that gun, and T.C. said, "Yes." *Id.* It was only after this that the government objected as to

relevance. Defense counsel countered that "if . . . Asbill had been brutally raping her," "it would be maybe a little more likely that he wouldn't have given her a gun." *Id.* at 99. The district court then sustained the objection. As this colloquy makes clear, T.C.'s testimony that Asbill gave her a gun was allowed in; the objection related only to whether T.C. had ever shot the gun, and defense counsel failed to explain the relevance. So the district court did not err in excluding this testimony.

## Conclusion

In sum, the district court did not err in limiting Asbill's cross-examination of T.C. The allegations of abuse in the DHS report were barred from admission by Rule 412, and the exclusion did not violate Asbill's constitutional rights. Asbill failed to lay the foundation for T.C.'s prior inconsistent statements, so the district court did not abuse its discretion in excluding them. And the district court did not exclude T.C.'s testimony about Asbill giving her a gun. We thus affirm Asbill's convictions.

Entered for the Court

Nancy L. Moritz
Circuit Judge